Schoolfield's Administrator *vs* Rudd, &c.    CHANCERY.

ERROR TO THE BRACKEN CIRCUIT.                 *Case* 68.

*Substitution.    Settlement of estates.    Administrations.*
*Preferred debts.*

JUDGE SIMPSON delivered the opinion of the Court.              *January* 31.

THIS suit in chancery was brought by the adminis-      Case stated.
trator of William Schoolfield, deceased, under the act
of 1839, (3 *Stat. Law,* 240,) to have a settlement of the
estate, and a decree for the sale of so much of the real
estate of his intestate, as might be necessary for the
payment of debts.

The whole estate, both real and personal, having
proved insufficient for this purpose, and a debt against
the estate having been presented, which it is insisted
should be paid in full before general creditors are paid
any portion of their debts, it becomes important to de-
cide whether it is a preferred debt under the statute, and
entitled to the precedence claimed for it.

It appears that the intestate had been appointed ad-
ministrator of the estate of John King, dec'd., and in
that capacity had obtained possession of assets to a con-
siderable amount.   Before his death, a suit in chancery
had been instituted against him by the distributees claim-
ing the balance in his hands after the payment of debts.
Having died during the progress of the suit before any
decree had been rendered, an amended bill was subse-
quently filed, making his sureties in the administration
bond parties, and praying a decree against them. The
suit was carried on without his administrator having
been made a party, and a decree finally obtained in fa-
vor of the distributees against his sureties for the sum
of four hundred and eighty nine dollars, and seventy
one cents.   Three of the sureties allege that they have
paid the amount of the decree to the distributees, and
claim the same preference which the distributees were

Schoolfield's
Adm'r
vs
Rudd, &c.

A surity who has
paid a fiduciary
debt for his prin-
ciple is entitled
to stand in the
place of his' prin-
cipal, and if the
debt were a pre-
ferred debt un-
der the statute of
1839, for the set-
tlement of es-
tates, the surety
has a right in
equity to the ben-
efit of such pre-
ference.
—But to author-
ize such substi-
tution, there
must be proof of
the payment of
the debt, and that
it was paid in-
discharge of a
legal liability.

entitled to against the general creditors of the administrator.

Under the provisions of the fourth section of the statute of 1839, this debt which the intestate owed in his fiduciary character to the distributees, was to be paid in full before the creditors not having preferred debts were entitled to any part of the estate. Does the payment of the debt by the sureties essentially change its character, and divest it of this right of priority? At the time of the intestate's death, he owed this debt, which was then a charge upon his estate, and had a right to the precedence which the sureties now claim for it. The doctrine is well established, that in equity, the surety who has paid the debt, is entitled to stand in the place of the creditor, so far as to have the same preference over general creditors, which the creditor himself would have had if the debt had remained unpaid. This principle would seem to apply with peculiar force in a case like the present one, where the sureties might have required the distributees to present the claim against the estate of the administrator, or might have done it themselves by appropriate pleadings, and obtained for it the preference now claimed. Having paid it, there is no good reason why its priority should be thereby lost, and in our opinion the sureties retain the same right to have it considered as a preferred debt, that the distributees had before its payment.

We are aware that this Court, in the case of *Buckner* vs *Morris*, (2 *J. J. Marshall*, 121,) and in the case of the *Mason County Court* vs *Lee*, (1 *Monroe*, 249,) decided that a surety having paid a specialty or judgment debt, did not become a specialty or judgment creditor, but was a simple contract creditor, and only entitled to rank as such. But the question in those cases, was as to legal priority, and not as to the effect of equitable substitution. If, however, they should be understood as having settled the doctrine, as the law stood before the passage of the act of 1839, that the surety was not either in law or equity, entitled to the preference over simple contract creditors which the specialty creditor had whilst the debt remained unpaid, we think the law

regulating the administration of estates, has been so essentially changed by the act of 1839, as to justify a change of this doctrine, so far as it can have any application to the question under consideration. The statue gives preference to certain debts, not with reference to their dignity according to common law principles, but with a view to equitable considerations, which entitle them to such a preference. As there was no equity in the legal priority which the specialty creditor had over the simple contract creditor, but it was rather opposed to the equitable doctrine of equality, there might be no good reason why the surety in a specialty debt, should after it was paid by him, be regarded more favorably than any other simple contract creditor. But where the preference is given to the debt, upon the ground that it is equitably entitled to it from its character, without any regard to its dignity as a judgment or specialty debt, it does not lose its equitable character when paid by the surety, but retains in his hands the same equitable claim to priority which it had before it was paid.

Admitting this debt to be entitled to rank as a preferred debt, still it is contended that it should not have been allowed, because there was no legal and competent evidence, either of its amount, or its payment by the sureties.

This, we think, is a valid objection. The suit in chancery which was carried on against the sureties of the administrator, without having made his personal representative a party, furnishes no evidence against his administator, of the amount which he owed in his fiduciary character at the time of his death, to King's distributees. Nor is there any evidence in the record, that the sureties have paid the amount of the decree against them, nor have they by appropriate pleadings, to which King's heirs would be necessary parties, demanded the payment of the debt to King's distributees, as one for which they are bound as sureties, and desire to have settled for their indemnity.

But as exceptions were not taken to this debt on this ground in the Court below, the sureties will be allowed

time, if they can do so, to establish by appropriate proceedings, to which the administrator of William Schoolfield must be a party, the amount to which King's distributees were equitably entitled, and they may also prove that they have paid it to the distributees.

Only one other question is made that requires notice.

Money received by an attorney for his client kept distinct and not mixed with the money of the attorney, is not to be administered—does not enter into the estate.

The intestate had collected, a short time previous to his death, a debt for E. Langhorn of $124 75 cents. He had collected it as an attorney, on a suit brought for the purpose, and informed the agent of the plaintiff, in his last illness, that he had received the money for him. After his death, one hundred dollars of the money was found in his pocket book, enclosed in a paper, and endorsed by him so as to show that it was the same money collected by him for E. Langhorn. The agent was present when the pocket book was opened, and took the money into his possession, and the question presented is, whether or not it is to be regarded as part of the estate of the intestate. As the money did not belong to him, but on the contrary, was the identical money received by him for his client, and as it was kept separate and not mixed with his money, it did not enter into or form a part of his estate, and should not be so considered.

But the Court, for the reasons mentioned, erred in allowing the debt claimed by the sureties in the administration bond.

Wherefore, the decree is reversed and cause remanded for further proceedings in conformity with this opinion. The plaintiff in error is entitled to his costs against the defendants, Isaac Baker, Peter H. Rudd and George B. Schoolfield only.

*W. C. Marshall* for plaintiff; *J. & W. L. Harlan* for defendants.