JUDGE PRYOR
delivered the opinion of the court.
On the 19th of March, 1870, S. S. Hite was made receiver of the Louisville Chancery Court, and on that day entered upon the discharge of his duties, having first executed a bond in the penalty of $100,000, conditioned for the faithful performance of the trust, and that he would account for and pay over to the parties entitled all moneys in his hands as ordered by the court. His sureties in this bond were James Bridgeford, Alfred Herr, Jacob Hite, sr., Richard Herr, and James Hite.
Subsequent to the execution of this bond the legislature, deeming that the penalty imposed was not sufficient to secure the rights of litigants, required the execution of a bond by the receiver in the penal sum of $200,000. This bond was executed on the 10th day of March, 1871, containing the same stipulations as the first bond, with James Bridgeford, Z. M. Sherley, Alfred Herr, Richard Herr, James Hite, and Jacob Hite as sureties.
The receiver, S. S. Hite, on the 2d day of May, 1870, borrowed of the appellant, the Farmers & Drovers’ Bank, the sum of $5,000, for which he executed his note as of that date, payable in four months, and to secure the payment of the money executed to the bank a mortgage on a tract of land in the county of Jefferson containing one hundred and twenty-six acres.
Hite, the receiver, having been required to settle his accounts as such from the time he qualified until the settlement was made, was found to be behind in his accounts on the 15th of April, 1874, in the sum of $4,909.41; and failing to make payment, the record shows that one of his sureties in the second bond (Sherley), in behalf of himself and co-sureties, appeared in court and made good the deficit.
*306 • The bank, on the 9th of June, 1874, filed a petition in the Louisville Chancery Court to foreclose its mortgage, and during the pendency of that action, the appellees, the sureties in the second bond, all of them being sureties in the first bond, except Sherley, upon petition were made parties to the litigation •by the bank, and asserted a lien upon the land prior in date to the mortgage.
By section 819 of the Civil Code, regulating proceedings in the Louisville Chancery Court, it is provided, “A debt incurred by any person or corporation, as receiver or depositary of money paid into the court, shall rank with debts due to the commonwealth, and shall have priority over other debts owing by such receiver or depositary, and precedence over any mortgage or lien upon his property made after its appointment. Accounts shall be kept of all moneys paid into the court, and with every receiver or depositary of such moneys, by the clerk or commissioner, as may be directed by the court.”
These sureties, having paid the debt, insist that, as the creditor to whom they were liable had a lien by reason of this section upon the estate of the receiver, they should be substituted to his rights, and their lien adjudged to be superior to the lien created by the mortgage. The court below gave them this ■preference, and from that judgment the bank has appealed.
It is argued by counsel for appellant that no lien can be successfully asserted in the present case by the sureties, ás no judgment had been rendered fixing their liability, or any judicial determination in favor of any of the creditors of the fund in the hands of the receiver showing that the latter had received moneys as an officer of the court for which he had failed to account.
The receiver in discharging his duties is necessarily under the control of the chancellor, and the latter may at any time : require him to settle his accounts, and to pay over the moneys in his hands to the parties entitled. If upon a settlement of *307 his accounts, or in any other manner, it appears that he holds a fund as receiver, upon his failure to pay, a summary proceeding may be instituted against him in order to coerce the payment of the money. The settlement having been made and reported to court, and confirmed, was a judicial determination of the fact that the receiver was in arrears in the sum of $4,909.41; and the sureties on the bond should not be required, before being entitled to be substituted to the rights of the creditor as against the debtor and his property, to submit to an action on the bond or other legal process, in order that they may satisfy the debt. It is shown that the debt is just and undenied by the receiver, and the amount due by the settlement is in effect a judicial finding.
The only remaining inquiry is, is the mortgage executed to the bank subordinate to the lien of the sureties ?
The right of a surety to substitution in a case like this is not regulated by any statute, but originated in the desire, by courts of equity, to protect the rights of sureties in placing them in the shoes of the creditor, whose debt they had paid, as against the debtor and his estate, and in the exercise of this equitable principle have always, where the creditor had a lien for the debt paid, substituted the surety to the same lien as against the general creditors of the principal debtor. The general doctrine may be regarded as settled that the surety will be substituted to the rights of the creditor, and certainly where the obligation of the surety to pay the debt is coeval with the debt itself and the lien given to secure its payment.
Cases, however, frequently occur where it is difficult to make the proper discrimination in the attempt to apply this rule. As said by this court in the case of Patterson v. Pope (5 Dana, 241), “but we are not prepared to admit that in any case this equitable right of remuneration from the principal debtor is a sufficient foundation for disregarding or subjecting to its satisfaction the interests of third persons, which, although *308 they may be subordinate to the lien of the creditor, are prior in date and more specific in character than the equity of the surety, etc.” The case of Schoolfield's adm'r v. Rudd (9 B. Mon. 291), cited by the chancellor, is not analogous to the case before us. By statute the debts owing by an intestate as a fiduciary in certain cases are to be paid in full before the general creditors, and in that case this court held that the surety, having paid oíf a debt preferred by the statute, had a right in equity to the benefit of the preference. In the present case it does not appear when the liability of the sureties originated, or that any liability existed upon the part of either Hite or his sureties to any creditor of the receiver’s fund until after the execution of the mortgage to the bank; this mortgage to appellant was executed in May, 1870, and the settlement of the receiver’s accounts, under the order of the court, was made on the 15th of April, 1874. The sureties, so far as this record shows, had neither paid the debt nor were they liable for it until long after the execution of the mortgage, and in the absence of any liability at the time the lien was created in favor of the bank, we know of no rule of equity, founded on reason or justice, that would make this mortgage-debt subordinate to the equity of the sureties. No claim is being asserted by any creditor to this fund, but a liability ascertained to exist on the part of the receiver in a general settlement of his accounts, four years after appellant took its mortgage, securing a defalcation amounting to near five thousand dollars.
The original bond had become a nullity by reason of the execution of the new bond, at least for the defalcation occurring after the new bond was executed; and the appellant now insists that its equity existed not only before payment was made, but before its liability to the creditor for the balance found due on the settlement originated, for the reason that those whose funds were in the hands of the receiver had a lien *309 on all the estate that the latter owned at the time of his appointment or during his continuance in office.
This court will not presume that the defalcation took place before the execution of the last bond or before the execution of the mortgage. It is true the appellees were sureties on the receiver’s bond, and were in a condition to become liable for all the moneys received and not accounted for by their principal. They had agreed to make themselves responsible for any breach of the covenant they had entered into, but when this money was received or the covenant broken does not appear. The defalcation was not ascertained until the lien of appellant originated, and the debt not paid by the sureties until four years and longer after the date of the mortgage.
To make the lien of appellant, in this state of case, subordinate to the rights of the sureties, would be carrying the equitable doctrine of subrogation to an extent not heretofore recognized by this court.
The sureties are entitled to be substituted to the rights of the creditor against the debtor and his property, but must be postponed to the equity of the appellant, it appearing to have obtained a bona fide mortgage on the debtor’s property long before any defalcation existed.
The judgment is reversed and cause remanded for further proceedings consistent with this opinion.