JUDGE ELLIOTT
delivered the opinion op the court.
On the 25th day of May, 1868, Joseph Donophan sold and conveyed to H. B. Moran and Elliott Fishback a tract of two hundred and seventeen acres of land lying in Bracken County. A lien was retained for the unpaid purchase-price, which was stated at over $5,000.
In 1870 H. B. Moran mortgaged his interest in this land, as stated in the agreed facts in this record, to Bodman & Co., and afterward, on the 20th of February, 1872, H. B. Moran executed a mortgage to R. B. Wiggins to secure him in a large debt, and the Wiggins mortgage was transferred, by regular assignment, to Holmes, Black & Co.
Bodman & Co. and Holmes, Black & Co. brought separate suits in the Bracken Chancery Court to enforce their mortgage securities.
It appears that when the unpaid balance of the purchase-money for the land fell due to Joseph Donophan, he brought his action at law against Moran and Fishback, and, having obtained a judgment at law, the same was replevied by the judgment debtors, with Frederick Fishback the appellant as their security. The replevin - bond was executed on the 2d of September, 1871. At the maturity of the bond an execution issued on it, which was levied on Frederick Fish back’s property, and on the Í5th of February, 1872, he paid off the debt, and the benefit of the same was duly assigned to him, as provided by law.
The suits of Bodman & Co. and Holmes, Black & Co. hav *119 ing been consolidated, tbe appellant asked to be made a party to these suits, and, by his answer, alleges that Donophan sold the two hundred and seventeen acres of land to Moran and Fishback, and retained a lien for the unpaid purchase-price; and that, having obtained a judgment at law for this purchase-money, the same was replevied by Moran and Fishback, with appellant as their surety, and at the maturity of the replevinbond he was compelled to pay the debt to prevent a sacrifice of his property, which he did, and the benefit thereof was assigned to him. He made the deed from Donophan to Mox’an and Fishback a part of his answer, also Donophan’s judgment and the replevin-bond and the assignment to him of the debt that he had paid as Moran and Fishback’s surety, and he also filed an assignment by Donophan to him, made on the margin of the deed from Donophan to Moran and Fishback, showing that the amount of the purchase-money which had been retained in the deed was coming to appellant.
After stating the facts, the appellant asked that he be subrogated to the benefit of Donophan’s vendor’s lien, and that the lien in his favor be adjudged superior to that of Bodman & Co., and Holmes, Black & Co. And, on hearing, the court dismissed his answer and cross-petition without prejudice, and he brings the case here by appeal.
In 1 Story’s Equity, 477-8-9 it is laid down as the doctrine of the common law, that a surety who pays the debt is equitably entitled to the benefit of all liens or other securities of tbe creditor, who holds them under an implied trust for the benefit of the surety. In Burk, &c. v. Chrisman, &c. this •court held the same doctrine. (3 B. Mon. 50.) In that case Burk bought a tract of,land at a decretal sale, a lien being reserved for the purchase - price, and gave on the sale-bond Chrisman & Crozier as sureties. Before the sale-money became due, Burk sold the land in parcels to several pax*ties, and failing to pay the sale-notes, the creditor sued Burk *120 and his sureties at law, and Chrisman & Crozier, the sureties, had the same to pay, and the court sustained their claim to substitution to the benefit of the vendor’s lien, and decided that Burk’s vendees should contribute to the payment of the sum paid by Burk’s sureties in proportion to the value of the land purchased by each. But in the case supra the sureties had become liable for the purchase-money as Burk’s surety before Burk sold any of the land on which the creditor held a lien.
But suppose that Burk’s vendor had not required security, and after his purchase Burk had sold the land on which a lien was reserved in the deed to him for the purchase-price, and after this sale by Burk, his vendor had sued him at law, obtained his judgment, and appellant had gone on a replevinbond as Burk’s surety, and as such surety had been forced to pay the debt, could he be subrogated to the vendor’s lien of Burk, so as to reach and subject the land in the hands of purchasers who had bought long before appellant had gone on the replevin - bond as Burk’s surety, or in any way become bound for him? If this be so, such sureties stand in as favorable an attitude as purchasers of the vendor’s lien-debt, and who have had the same assigned to them. And therefore if the creditor had two mortgages on the same land, and he was to sue at law on the first mortgage - note, and the defendant replevied the debt which his security on the replevin-bond afterward had to pay, he could file his petition in equity, and be substituted to the rights of the creditor in the first mortgage, and thereby obtain a preference to be paid the amount of the first mortgage-debt before the creditor could get any thing on his second mortgage.
In the case of Patterson v. Pope, 5 Dana, 241, it appeared that Mrs. Chinn had sold to a Mr. Wilgus a tract of land, and took a mortgage for the unpaid purchase-price, after which Wilgus sold the same land to Richard Patterson, and a judg *121 raent having gone against Wilgus for the unpaid purchase-money, the same was replevied by him, and a short time thereafter he filed his bill against his vendor, Mrs. Chinn, who had intermarried with a Mr. Hughes, and also against Patterson, and on equitable grounds alleged by him asked the court to rescind the contract.
Mrs. Chinn and Patterson resisted the -rescission of the contract, which resulted in the dismissal of Wilgus’s suit and a dissolution of his injunction, and on appeal to this court in the year 1820, that judgment was affirmed. Afterward Mrs. Chinn sued Wilgus’s surety in the injunction-bond and obtained judgment against him, and, he having arranged her purchase - money debt, she assigned him the benefit of her mortgage-lien against Wilgus, on which he instituted an action for his indemnity, in the name of Mrs. Chinn, for his benefit. Patterson, who had purchased the land from Wilgus, was made a party, and resisted the relief sought by Mr. Pope, Wilgus’s surety in the injunction-bond, on the ground that he had bought the land from Wilgus and paid him for it long before the complainant Pope went on the injunction-bond as surety of Wilgus, and as Pope’s equity had no existence till he went on the injunction-bond, that it could not prevail against him. The lower court adjudged in Pope’s favor, and Patterson brought the ease to this court.
In the opinion it is said by this court that “it is contended in argument in support of the decree that in equity a surety who has discharged the debt is entitled to stand in the shoes of the creditor as to all liens securing the debt. If this be so, and can be applied to this case, the surety who pays the debt may, under any and all circumstances, stand as the assignee and purchaser of all liens for securing it, and his title would of course overreach all intermediate interests in the pledged property arising subsequent to the date of the lien, though prior to the commencement of his obligation. The authori *122 ties referred to do not support the position to this extent, nor. can we admit that the doctrine, to this extent, has any foundation in equity or reason. Some of the elementary writers upon the subject have stated the principle as broadly as is contended for, and in some of the adjudicated cases dicta may be found which seem to countenance it to nearly the same extent. But these were cases in which the right was presented in its simplest form, and discrimination was not necessary. We have seen no case in which it has been decided, either in terms or in effect, that a surety, becoming so by entering into an- obligation taken in the prosecution of the ordinary coercive remedies against the person of the debtor, can, by paying the debt, acquire such a lien on the mortgage or other lien of the creditor as will enable him to displace any pre-existing specific interest in the mortgaged property derived from the debtor after the date of the mortgage.”
This court then referred to several cases cited by Pope’s counsel, and say: “ But these cases do not decide the question produced by. a pre-existing specific interest in the property, by reason of which it ceases to be in fact the property of the debtor before the surety becomes bound. Nor do they touch the question as to the rights of the surety who comes in as surety in an obligation incidental to the prosecution of the legal remedy against the debtor, and therefore not by the act or consent of the creditor.”
“ The true principle and object of the substitution of the surety is to effectuate his right to be remunerated by the principal whose debt he has paid. For this purpose he is, in general, entitled, in equity, to all the remedies of the creditor against the person and property of the debtor. But we are not prepared to admit that, in any case, this equitable right of -remuneration from the principal debtor is a sufficient foundation for disregarding or subjecting to its satisfaction the interests of third persons, which, although they may be subordinate to *123 the lien of the creditor, are prior in date and more specific in character than the equity of the surety; which can not commence before he becomes bound for the debt, if, indeed, it can commence before he pays it. Without, however, intending to determine the proper limits of the right of a surety whose obligation is coeval with the debt itself, or who comes in afterward by the act or with the consent of the creditor, and who may be supposed to have some peculiar equity against him, we are decidedly of the opinion that, a surety who first comes in as a surety in an obligation incidental to the prosecution of the legal remedy against the person of the debtor is prima facie to be considered as trusting to his principal only, for whom alone he is surety; that upon his paying the debt he is entitled to stand in the creditor’s place, only as to his remedies against the person and property of the principal, and that as to any prior surety, or any prior interest in the property which may be under pledge, he must occupy the place of the debtor.”
This court then put the case of two mortgages to the same creditor, and asked if the replevin surety could, by paying the first debt, be substituted to the rights of the creditor in the first mortgage, and thereby gain a preference over his second mortgage; and on this subject the court say that the surety “ has no right to be substituted to the remedies of the creditor further than will enable him to reach the debtor and his property without affecting the interest of any actual incumbrancer who has intervened between the date of the lien and the date of his obligation.” The court then goes on to say that it can not perceive on what principle this prior specific equity of the second mortgagee or purchaser for value after the first mortgage “ can be postponed to the subsequent equity of the surety, which is certainly not more specific nor more meritorious.” The court reversed the case of Patterson v. Pope, and decided that Patterson’s equity was elder and superior to either Pope’s *124 or the surety who replevied Mrs. Chinn’s judgment against Wilgus.
The case of Patterson v. Pope was quoted with approval by this court in the case of the Farmers & Drovers Bank v. Sherley, &c., 12 Bush, 304, in which it was held that a surety will not be substituted to the rights and liens of the creditor so as to defeat an interest acquired and held by a third person, when that interest, though subordinate to that of the creditor, is prior in date to the undertaking of the surety.
In the light of the reasoning of these cases it seems to us that if the creditor, without resorting to his lien, attempts to collect his debt at law from his debtor, and before the debt is replevied, a second valid lien is created in favor of a third person; the surety, who has replevied the debt, and thereby prevented a sale of the debtor’s property, ought not, when the same is coerced out of him, to be substituted to the rights of the judgment creditor, and thereby overreach a lien for value created long before he became bound as surety for the debt. We are therefore of opinion that appellant’s lien must be subordinate to that of Bodman & Co. as to Moran’s interest in the two hundred and seventeen acres of land, because the mortgage to Bodman & Co. had been executed long before appellant replevied or paid Donophan’s debt.
But we are of opinion that appellant’s lien on Moran’s interest in this tract of land is elder and superior to the assignees of the Wiggins mortgage, and for these reasons the court erred in dismissing his cross action, and especially so, as he has a lien on Elliott Fishback’s half of the land, in which the mortgagees have no interest.
Wherefore the judgment of the court below is reversed, and cause remanded for further proceedings in conformity to this opinion.