Nelson, J.,
delivered the opinion of the court.
In the progress of this cause, two tracts of land belonging to the estate of John Burris, the intestate, were ordered to be sold for the payment of debts, and on the 29th of January, 1870, the Clerk and Master sold the same at public sale, at the courthouse door, in Bogersville, when William Click became the purchaser of an undivided moiety in the tract, containing from 80 to 100 acres, at fifty dollars, John Smith became the purchaser of the home place, exclusive of the dower assigned to the widow, at $300, and Caroline Burris, the widow, became the purchaser of the interest in remainder, in the dower tract, at twenty-five dollars, and the several purchasers executed their notes, with security, and liens *541 were retained as directed by the Chancellor’s decree. The sales were dnly reported to the court, but before their confirmation and on the 10th day of March, 1870, J. H. Ellis and R. G. Netherland filed a joint petition, in which they severally represent that they are creditors of the estate; that they had not been made parties to the administrator’s bill praying the sale; that the lands were sold at a price greatly less than their value, and the greater part purchased by the widow and son-in-law of the intestate; that if the sale should be confirmed, the estate would become insolvent, and a loss be sustained by the creditors, and that they could show good reasons for setting aside the report and ordering a re-sale. The petitioners were, accordingly made parties defendant with leave to except the report or make any other defense in the case. The Chancellor refused to set aside the sale, or to open the biddings, dismissed the petition and pronounced a decree of confirmation, March 12, 1870, from which the petitioners appealed to this court. Before said decree was pronounced, the petitioners filed another petition, in which they state that the sale was made at the court-house, nearly twenty miles distant from the land, in an inclement season, when the roads were in very bad condition for travel, and when it vas not generally known in the neighborhood that the ;ale was to take place. They state that they had some information on the day preceding the sale, that h was to take place, and assign unimportant reasons for- their non-attendance, but propose to raise the bid on the land to $750, something over one hundred per *542 cent., and to secure the amount as the court may direct, giving all other persons the right to bid a higher price. This offer was repeated on the hearing. The question before this court is Avhether the Chancellor erred in refusing to set aside the sale and to open the biddings?
Reference has been made, in argument by counsel, to various decisions formerly made upon similar questions by this court, and reported in 5 Hum., 352; 7 Hum., 266; 11 Hum., 281; 3 Sneed, 200; 5 Sneed, 413; 2 Swan, 487; 5 Yer., 240; 1 Col., 194; In these cases, as well as in Johnson v. Quarles, 4 Col., 615, the authorities, English and American, are, to a greater or less extent, cited and reviewed, and while there has been an apparent fluctuation of opinion, growing out of the desire on the one hand to encourage purchases at chancery sales, and upon the other, to prevent a sacrifice of property, no uniform rule upon the subject has been prescribed. In Childress v. Hurt, 2 Swan, 489, the biddings were reopened on the offer of an advance of thirty per cent. In Johnson v. Quarles, the court refused to open the biddings on an offer of twenty per cent. In Coffin v. Corruth, 1 Col., 196, it was said that “before confirmation the biddings will be opened on slight grounds.” This expression is criticised in 4 Col., 619, 620, where it is said that each case must depend upon its own circumstances, and that “there should, in every case where such sale is set aside, be special circumstances rendering it inequitable to confirm the sale.” In Newland v. Gaines, 1 Heis., 724, the case *543 of Johnson v. Quarles is referred to as establishing the principle that there must be “fraud, accident, or some other circumstances malting it inequitable to confirm the sale,” and the correctness of this authority is not determined, although evidently disapproved.
All the authorities concur in requiring very strong facts and circumstances to set aside a sale after confirmation, and it is held that no advance of price, however large, will have the effect to open the biddings: Houston v. Aycock, 5 Sneed, 413. But before confirmation, all the cases agree in holding that the sale is under the control of the court; that the bid is a mere offer to purchase; that the contract is not complete until confirmation; that, until then, “ the purchaser is not compelled to complete his purchase; nor is he entitled to a conveyance, nor to be let into possession of the estate; neither is he liable to any loss or injury by fire, or otherwise, which may happen to the estate in the interim ”: Childress v. Hurt, 2 Swan, 490; Polk v. Pledge, 5 Col., 389; Johnson v. Johnson, 2 Heis., 530; Lasell v. Powell, 7 Col., 282; Pearson v. Johnson, 2 Sneed, 583.
In two of the cases the application to open the biddings has been treated as an 'application to the discretion of the Chancellor: Owen v. Owen, 5 Hum., 356; Donaldson v. Young, 7 Hum., 267. In other cases, it is said each case must depend on its own circumstances, and the court has declined to prescribe any uniform rule on the subject: Morton v. Sloan, 11 Hum., 284; Childress v. Hurt, 2 Swan, 491. And in Houston v. Aycock, above cited, it was observed thai *544 “the English rule is, that before confirmation of the sale, mere advance of price is sufficient to open the biddings; but our cases, on grounds of well-considered policy, require something more.” 5 Sneed, 413.
Without. undertaking critically to review, or to reconcile, the various cases referred to, this court is of opinion that a sound policy requires, and the interest of all parties concerned in the property sold, as well as that of the purchasers, demands that a fixed rule shall be established which may be acted upon understandingly. In 2 Perk. Dan. Ch. Prac., 1st ed., s. 1465, it is said that where estates are sold before a Master, under the decree of a court of equity, the court considers itself to have greater powers over the contract than it would have were the contract made between party and party; and it is added that “the chief aim of the court is to obtain as great a price for the estate as can possibly, be got.” The uncertainty of any rule as to opening the biddings is as much calculated, if not more, to deter persons from bidding for the property, than a fixed rule to which all can conform their action. All purchasers may be fully apprised, by the course of decisions in this State, that their purchases require confirmation and may be set aside, but under existing circumstances they are not informed what causes will be sufficient for that purpose. It has, perhaps, sometimes occurred in practice, that sales have been set aside without notice to purchasers, and without their having an opportunity to compete in the new biddings. To guard against this, we think it best to announce, as a rule for the *545 future action of this court, but not. to govern sales which have already been made, that we will adopt the English practice, and when. it appears that an increased bid of ten per cent, has been offered, the biddings will be opened. This rule will be applied in cases where the proposal to open the biddings is made at the term of the court to which the report of sale is made, and where it appears that notice of the intention to make the offer has been given to the first bidder, or purchaser; and where the rule is applied, the property will be put to sale at the increased bid, with open competition to all other bidders, and when the re-sale is made, the biddings will not again be opened, except under extraordinary circumstances.
In the ease before us, we are clearly of opinion that the biddings should have been re-opened on the offer of an advance of more than one hundred per cent. It is argued, on the one side, that the property is worth two thousand dollars, and that if it sells for no more than the amount of the advanced bid, the purchasers will make a large speculation, as disproportionate to the real value of the property as the amount for which it was sold is disproportionate to the sum bid at the sale, and that in a choice between speculators, the widow and children should be preferred. On the other hand, it is said that the widow and only one of the children will be benefitted, to the exclusion of the others, and that the amount of the advanced bid will probably discharge the debts due from the estate. We think it unnecessary to weigh these considerations, as when the is *546 offered for sale at tbe advanced bid, it will be sold to the highest bidder, and any person will be at liberty to engage in the competition.
Reverse the Chancellor’s decree, and remand the cause to the end that a re-sale may take place under his direction. The costs of the petition in this court and the court below will be paid by the petitioners.