THE AURORA AGRICULTURAL AND HORTICULTURAL
SOCIETY OF AURORA

*v.*

HENRY C. PADDOCK *et al.*

1.  CORPORATIONS—*power to mortgage.*  The power to mortgage, when not expressly given or denied to a private corporation, will be regarded as an incident to the power to acquire and hold real estate and to make contracts.

2.  SAME—*power to alien property.*  All private corporations have an incidental right to alien or dispose of their lands and personal property without limitation as to objects, unless restrained by the act under which they are organized, or by statute.

3.  SAME—*power of directors to mortgage.*  Even if the directors of a private corporation have no authority to borrow money and mortgage its real estate for its repayment, yet, if the stockholders ratify their action by approving the minutes of their proceedings before the loan is effected, and afterwards receive the benefit of the loan and pay interest thereon, the stockholders will be estopped from questioning the authority of the directors on bill to foreclose the mortgage.

APPEAL from the Circuit Court of Kane county; the Hon. SILVANUS WILCOX, Judge, presiding.

This was a bill in equity, by Henry C. Paddock, Thomas B. Coulter and Lucy Coulter, executors of the last will and testament of John R. Coulter, deceased, against the Aurora Agricultural and Horticultural Society of Aurora, Illinois, and various others, to foreclose a mortgage given by the society to John R. Coulter, in his lifetime.

Mr. EUGENE CANFIELD, and Mr. C. D. F. SMITH, for the appellant.

MR. A. G. McDOLE, and Mr. B. F. PARKS, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by appellees, to foreclose a mortgage executed by the Aurora Agricultural and Horticultural Society of Aurora, on the 28th day of December, 1870, to secure the payment of $6000 loaned by John R. Coulter to the society. The court, on a hearing of the cause, rendered a decree directing a sale of the mortgaged premises in satisfaction of the mortgage debt.

The society has prosecuted this appeal, and in order to obtain a reversal of the decree, it is insisted by the counsel for appellant:

*First*—That the society had no power whatever to mortgage.

*Second*—That the mortgage in question was wholly unauthorized.

The appellant was organized on the 6th day of March, 1869, under an act approved Feb. 15, 1855, which authorized the incorporation of agricultural societies. (Gross' Statutes, 1869, page 119.) By the third section of the act, the society was made a body corporate, with power to sue and be sued, to acquire and hold real estate not exceeding five hundred acres, to construct the necessary improvements and buildings for its purpose, to have and employ capital, machinery, live stock, etc., not exceeding in value $10,000.

While it is true, no section of the act confers direct authority upon the society to sell or mortgage its property, except

upon a dissolution of the corporation, yet the act does not prohibit or restrict the society from selling or giving a mortgage upon its real estate. The power to mortgage, when not expressly given or denied, must be regarded as an incident to the power to acquire and hold real estate and make contracts.

We understand it to be the common law rule, that corporations have an incidental right to alien or dispose of their lands and personal property, unless specially restrained by the act under which they are organized or by statute.

It is said in Angell & Ames on Corporations, p. 153: "Independent of positive law, all corporations have the absolute *jus disponendi*, neither limited as to objects nor circumscribed as to quantity." The same doctrine is clearly laid down by Kent, vol. 2, page 280.

We are, therefore, of opinion, as the society was not prohibited from mortgaging its lands, it possessed the power to do so as an incident to the power to purchase and hold real estate and make contracts.

In regard to the second point relied on by appellant, that the directors of the society had no power to authorize its president and secretary to mortgage the premises, such power, if it existed at all, being in the stockholders,—a complete answer to this position is, that the action of the directors was ratified by the stockholders.

It appears, from the evidence, that on the 31st day of October, 1870, a meeting of the directors was held, and a resolution adopted, as follows:

"On motion, the president and secretary were instructed and authorized to borrow $6000 for three years, at ten per cent interest, to be used for paying for fair grounds and other indebtedness of the society, and give a mortgage on said fair grounds for said amount, as security."

On the 3d day of December following, the stockholders of the society held their annual meeting, and the record of their proceedings shows that the minutes of the last annual meeting, also meetings of the board of directors held August 13, 1870, and October 31, 1870, were read and approved. On the 28th

day of December following the meeting of the stockholders, the mortgage in question was executed.

It is thus conclusively established, and that, too, by a record made by the stockholders themselves, that they not only knew, before the mortgage was executed, that the directors had authorized the loan and the giving of the mortgage, but they expressly ratified the action of the directors. It is true, now when an attempt is made to collect the mortgage debt, that the stockholders plead ignorance of the action of the board of directors, but their evidence upon this point is not sufficient to impeach a record of their own making.

In addition to this, the validity of the debt has always been conceded by the stockholders. The interest has been paid, and in various ways it has been recognized as a *bona fide* and subsisting obligation against the society.

Independent, however, of these acts, neither the society nor the stockholders are in a position to interpose the defense attempted to be made to the collection of the mortgage.

The money, the payment of which was secured by this mortgage, was used for the purpose of paying the purchase money the society had contracted in the purchase of the mortgaged premises. Can the society, after it has borrowed appellees' money and used it, when proceedings are instituted to collect it in a court of equity, be heard to say: true, we had your money; the honesty of the debt we concede; we secure its payment by a mortgage, but we had no authority to give the mortgage; the officers who executed the mortgage were not empowered to act by the stockholders. A defense of this character would be contrary to equity, and in conflict with the rules of law, as declared by this court in several well considered cases.

In *Ottawa Northern Plank Road Co.* v. *Murray*, 15 Ill. 336, which was a bill to foreclose a mortgage given by the company, the defense interposed was, that the persons who executed the mortgage were not directors of the company or authorized to mortgage the property. Upon this point it was held, that the mortgage was executed by the company in

the mode prescribed by its charter, for the express purpose of securing the payment of the loan thus made. After receiving the money, and giving the mortgage to secure its repayment, the company can not avoid liability by questioning the authority of the persons making the loan.

In *Bradley* v. *Ballard*, 55 Ill. 413, which was a bill filed by a stockholder of an incorporated company to enjoin the collection of a note given for money which the company had used for a purpose not authorized by the charter of the company, the purpose for which it was to be used being known by the lender of the money at the time the loan was made, it was said: "While courts are inclined to maintain with rigor the limitations of corporate action, whenever it is a question of restraining the corporation in advance from passing beyond the boundaries of their charters, they are equally inclined, on the other hand, to enforce against them contracts, though *ultra vires*, of which they have received the benefits."

The money for which the mortgage was given was not obtained by the society for an illegal purpose. It had contracted indebtedness in the purchase of lands to carry on the business for which it was organized. This indebtedness had to be paid, and the money appellees loaned to the society was used for the purpose of discharging honest debts the society had contracted.

Suppose the society violated some of its rules or by-laws in becoming indebted, the stockholders were never heard to raise an objection; on the other hand, they acquiesced. Having done this, it is too late for them now to say the society transcended its powers in contracting the debt and giving the mortgage, after they have received the benefits of the loan. It was the duty of the stockholders, if the officers of the society attempted to transcend their chartered powers, to restrain them. They had no right to remain silent and permit them to make contracts with third parties, and receive the benefits flowing from such contracts, and then, when a court of equity is called upon to enforce a repayment of the money, take shelter behind unauthorized acts of the officers who had been intrusted with the management of the affairs of the society.

268      LAW *v.* THE PEOPLE *ex rel.*      [Sept. T.

Statement of the case.

What is here said has no application, however, to municipal corporations, but applies only to private corporations.

No substantial error appearing in the record, the decree will be affirmed.

*Decree affirmed.*