## James Powell et al.

v.

## Edward R. Allen et al.

| 11  129
| 48  326

1. Surety—Subrogation.—It is the general rule that a surety who pays a debt otherwise secured, will thereupon, in equity, be subrogated to all the previous rights of the creditor in such security, according to its legal force and effect, as against all persons.

2. Exceptions to rule.—But where a surety whose obligation was not coeval with the original debt or the ex cution of the security therefor, pays such debt, he will not, as against intervening liens acquired after contracting the original debt, but before payment by the surety, be entitled to the benefit of the lien of such security.

3. Voluntary payment.—Appellants held a mechanic's lien upon lands, subject to a certain mortgage. The mortgage was foreclosed and a decree entered finding the interests of all parties. From this decree an appeal was prayed, and appellees became sureties on the appeal bond. Suit was brought upon the appeal bond, whereupon appellees paid the amount under the foreclosure decree, and took an assignment of the mortgage: *held*, that as again st appellants there was no right of subrogation; that appellees were mere volunteers; and that upon payment of the mortgage the mortgagee had no power to assign the mortgage.

Appeal from the Circuit Court of Kane county; the Hon. Charles Kellum, Judge, presiding. Opinion filed August 8, 1882.

Mr. M. O. Southworth and Mr. Charles Wheaton, for appellants Powell and Barrett; that a surety who was not originally bound for the debt, but who comes in during the prosecution of a remedy for the debt, can not by subrogation obtain preference over creditors whose liens attached before the surety became bound, cited Brandt on Suretyship, 362; Bank v. Rudy, 2 Bush, 326; Armstrong's Appeal, 5 Watts, 85, 352; Patterson v. Pope, 5 Dana, 241; Dickinson v. Todd, 43 Ill. 504.

A former adjudication is a bar to all matters in controversy and to all that might properly have been included therein: Hamilton v. Quinby, 46 Ill. 9; Peterson v. Nehf, 80 Ill. 25; Rogers v. Higgins, 57 Ill. 244.

Mr. A. J. HOPKINS and Mr. N. J. ALDRICH, for appellants Dickenson and George; against the right of subrogation in this case, cited Bank v. Rudy, 2 Bush, 326; Crump v. Mc-Murtrie, 8 Mo. 408; Farmer's Bank v. Shirley, 12 Bush, 304; Swan v. Patterson, 7 Md. 164; Johnson v. Morrison, 5 B. Mon. 106; Korms v. Bank, 7 B. Mon. 303; Magee v. Leggett, 48 Miss. 139.

Mr. R. G. MONTONY and Mr. EUGENE CANFIELD, for appellees; as to the right of subrogation, cited, Salter v. Salter, 6 Bush, 624; Leake v. Ferguson, 2 Gratt. 419; Rogers v. Mc-Lurn's Adm. 4 Gratt. 81; Taul v. Epperson, 38 Tex. 492; Billings v. Sprague, 49 Ill. 509; Fogarty v. Beam, 100 Ill. 366.

Although appellees were stockholders, they had a right to deal with the society or its creditors as if they were strangers: Merrick v. Penn. Coal Co., 61 Ill. 472; Field on Corporations, § 361; Angell & Ames on Corporations, § 233.

Appellees did not purchase the decree *lis pendens*. After decree the suit is not existing in the sense of the doctrine of *lis pendens*: Fergus v. Wordsworth, 44 Ill. 374; Harrington v. McCollum, 73 Ill. 476; Story's Eq. Jur. § 405; Miller v. Sherry, 2 Wall. 237; Lee County v. Roger, 7 Wall. 181; Montanye v. Wallahan, 84 Ill. 355.

PLEASANTS, J.    In December, 1870, the Aurora Agricultural and Horticultural Society, a body corporate, borrowed of John R. Coulter $6,000, which it secured by a mortgage on its fair grounds.

Afterward it became indebted to the several firms of Howell and Shoemaker, Powell and Barrett and Dickinson and George —lumber dealers of Aurora—for material used in the erection of sheds and other suitable improvements upon said premises.

In October, 1873, upon the petition of Shoemaker, making the society and the executors of Coulter the only defendants, the debt so due to his firm, amounting to $807, and of which he had become the sole owner, was decreed to be a lien thereon, subject to that of said mortgage.

Between that time and the 23d day of January, 1874, the other creditors above mentioned also instituted proceedings for the enforcement of their respective claims.

The bill to foreclose the mortgage made all the other lien holders co-defendants with the society.

Shoemaker, though duly served with process, failed to appear and was defaulted. At the October term, 1874, the other pending cases were consolidated with that, and afterward, on final hearing upon the pleadings and proofs, a decree was entered, finding due to the executors $7,190.30, to Powell & Barrett $449.48 and to Dickinson & George $1,408.89, and directing that in default of payment within ten days, the master should sell the premises and out of the proceeds pay said several sums with interest in full, or, in case of a deficiency, *pro rata*.

From so much of said decree as related to the mortgage, the society appealed, the appellees herein, together with George Loucks, becoming sureties on its bond.

Upon the affirmance of that decree by the Supreme Court, 80 Ill. 263, the executors brought suit upon the appeal bond to the February term, 1878, but on the 29th day of January, the sureties therein—excepting Loucks, who had gone into bankruptcy—paid the amount of the mortgage debt found due, with the costs of said suit, and took a formal assignment of the executors' interest in the note, mortgage and decree. They then obtained a quitclaim from Shoemaker, who had purchased the premises at the sale under the decree upon his petition, and received a deed in pursuance thereof—and thereupon with him filed a bill to impeach the foreclosure decree, as to its finding in favor of appellants herein, and leaving out the claim of Shoemaker for fraud; upon which a preliminary injunction against further proceeding under said decree was granted. That case being heard upon the merits at the February term, 1879, said injunction was then dissolved and the bill dismissed.

In April following, appellants Powell and Barrett, filed what they called a supplemental bill, in the foreclosure case, alleging that since the decree entered therein, the mort-

gage debt had been fully paid, and praying a modification of the direction as to the application of the proceeds of the sale. Process thereon was taken out only against the executors and Dickinson & George.

The executors failing to appear were defaulted, and upon a hearing on said bill and the answer of the other defendants thereto, a decree was made finding as a fact the payment of the mortgage debt, and ordering the proceeds of the sale to be applied upon the claims of Powell and Barrett, and Dickinson and George, and the residue, if any, to be brought into court. The master then advertised the sale for July 1, 1879, but on the 30th of June, appellees filed the bill herein against appellants, together with said executors and the master in chancery, reviewing the facts and litigation above outlined, alleging that the said supplemental proceedings were fraudulent on the part of appellants, praying that the decree thereon be set aside and claiming as purchasers all the rights of said executors under the Coulter mortgage and the decree for its foreclosure.

Appellants answered, defending said supplemental proceedings, and after all the evidence had been taken, the parties filed a stipulation that this cause should be consolidated with the foreclosure case and the supplemental proceedings, and that the decree herein should determine the whole controversy. The circuit court found the equities with the complainants, and granted the relief prayed.

Hence this appeal.

As we view it, this voluminous record presents for our determination a single question, and that a legal one arising upon a few undisputed facts, viz: whether appellees acquired to their full extent, as against appellants, the rights of the executors under the mortgage and decree of foreclosure.

The facts referred to are those here following:

First. Appellees were sureties for the mortgage debt. The decree was for that debt, their obligation as sureties was to pay the decree if it should be affirmed, and it was affirmed.

Second. That obligation was contracted more than four years after the execution of the mortgage security, and without the consent of the mortgage creditor.

Powell v. Allen.

Third.  That in the meantime the liens of appellants upon the mortgaged premises had accrued, been judicially declared, and were in course of enforcement.

Fourth.  That of these facts the appellees at the time they assumed said obligation had full notice.

Fifth.  That such assumption was voluntary, and in their own interest, or that of the principal debtor or of both.

The answers of appellants charge that appellees were officers and stockholders, and embraced nearly all the stockholders of the debtor society.  The mortgage is executed by appellee Gates as its secretary, and appellee Blair testifies that he was a stockholder.

The writer does not now refer to the record as to the others, but if the allegation of the answers is true of them also, the interest of all was in fact identical with that of the principal debtor; this, however, is not very material.

Sixth.  That the purpose of appellees in its assumption was thereby to delay the enforcement of appellants' liens.

Seventh.  That its natural and actual, and therefore presumably its intended effect was not only to delay such enforcement, but to expose appellants to risks of loss and injury which would not otherwise have arisen.

Since the decree found that the amount of appellants' claims bore to that of the mortgage debt the same proportion as did the value of the improvements upon the mortgaged premises to that of the land without the improvements, and fixed so short a time for the sale of the premises that no change in their relative values before such sale was reasonably to be apprehended, it not improperly directed that the land and the improvements be sold as an entirety, and the proceeds applied to the payment of all the claims *pro rata* if not sufficient to pay them in full.  No injustice to the executors, representatives of the mortgage creditor, was likely to be thereby done.

But in strictness the mortgage was the first lien upon the land, and appellants' claims first only upon the improvements, and if by the delay of the sale any material change in their relative value had occurred—as by decay or destruc-

tion of the improvements to which the land was not liable, it would have been proper to modify it in justice to the mortgage creditor.

Suspension of the execution of the decree as to the mortgage indebtedness, by appeal therefrom, would also delay it as to the other claims, since the existence and amount of that indebtedness must be finally ascertained before it would be possible to determine the *pro ratâ* amount to be applied on them.

Lastly. That after their liability had become fixed, appellees paid the amount found due to the mortgage creditor, and took a formal assignment of his interest in the mortgage and decree.

The general rule is, that a surety who pays a debt otherwise secured, will thereupon in equity be subrogated to all the previous rights of the creditor in such security according to its legal force and effect, as against all persons. Story's Eq. Jur. Secs. 337, 499, 502. Brandt on Suretyship and Guaranty, Secs. 260, 275, and cases cited in the notes. It has been repeatedly recognized as familiar by our own Supreme Court. Wise v. Shepherd, 13 Ill. 41; Billings v Sprague, 49 Id. 509; Hough v. The Æːna Life Ins. Co., 57 Id. 318; Fogarty v. Ream, 100 Id. 366. But usually a surety is bound with his principal by the same instrument, executed at the same time and upon the same consideration. Brandt, Sec. 1. That is the case which the general rule contemplates, and there the ground on which it rests, and its fairness to all parties concerned, are sufficiently obvious. The creditor accepts the surety with the natural understanding that he relies upon the collateral to save him harmless more or less; subsequent purchasers or incumbrance of the property pledged have the same notice of his equity as of the creditor's rights; and the debtor has his debt paid by one who became bound therefor at his request.

But different or further facts attending the contract of suretyship or the payment, may destroy or vary the equity of the surety as against some or all of such parties, and as sub-

rogation is not of legal right, the courts in which alone it is enforced may limit its operation, impose terms, or disallow it altogether, as justice under the special circumstances may require.

In the case before us, the creditor, having received the amount due him, is no longer concerned about the security; and the debtor has had its debts paid by another party who became bound at its request, and therefore can not complain if such security is kept alive against it in favor of that party. The controversy in relation to subrogation is between sureties whose obligation was not coeval with the debt or with the execution of the mortgage security for it, and intervening in-cumbrancers, and the question is, whether by payment there-under of the debt secured by prior lien the former became entitled to the benefit of that lien, as against other interests in the premises acquired subsequent thereto, but prior to their assumption of that obligation.

When the liens of appellants attached, the appellees had not become sureties nor had they when they did so become, any interest in the premises, unless they were identified with the mortgagor, to be protected thereby.

Nor did they assume their obligation as sureties by pro-curement or with the consent or in the interests of appellants or of the mortgage creditor.

Indeed, it is not clear that in so doing they relied upon the mortgage for their indemnity, to any extent whatever, for the defense in aid of which they became bound, while not denying the debt, sought to impeach the mortgage as unauthorized and void.

It is not easy to see why their position, as against appel-lants, is any better than that of volunteers, in whose favor subrogation is never allowed: B'k of the U. S. v. Winston's Ex'r, 2 Brock. 554: Hough v. The Ætna Life Ins. Co. 57 Ill. 218; Brandt on Suretyship and Guaranty, Sec. 260, p. 351.

As to the intervening incumbrances the prior debt was paid and the security for it extinguished by the voluntary act of the surety without their procurement or consent. Upon this question, the authorities, directly bearing, are not numerous,

but so far as we are advised are all against the surety. See Brandt, Sec. 268, p. 362 and note in which they are referred to. It was most fully discussed in Patterson v. Pope, 5 Dana (Ky.) 241. A rehearing was denied and the case was further approved in B'k of Hopkinsville v. Ruby, 2 Bush, 356; Johnson v. Morrison, 5 B. Monroe, 106; and Farmer's and Drover's B'k v. Sherley, 12 Bush, 304. The same doctrine is held in Armstrong's Appeal, 5 Watts & Serg. 352. See also Swan v. Patterson, 7 Md. 164 and 2 Leading Cases in Eq. (Hare and Wall.) 231.

It seems that the distinction is made upon the time at which the surety becomes bound. His equity reaches no farther. In cases like the one at bar he is presumed to have relied upon the general responsibility of the principal, and his right in the property covered by the security as existing at that time, subject to all interests of other parties previously acquired. As to such interests, he occupies the position of the debtor, and not of the creditor whose debt he pays.

The cases cited as *contra* do not appear to be in point. In Rogers v. McLure, adm'r, 4 Gratt. 81, it is not shown when, with reference to the opposing interests, the obligations of the surety arose. In Taul v. Epperson, 38 Texas 492, it was prior in time. In Leake v. Ferguson, 2 Gratt. 419, the surety was bound for a surety whose obligation was coeval with the debt, and was substituted for his principal. So also in Salter v. Salter's Creditors, 6 Bush, 624.

We are of opinion then, that by virtue of their suretyship for and payment of the mortgage debt, appellees acquired no rights in the premises as against the appellants. But it is claimed that they were purchasers and assignees of the mortgagee's rights in the mortgage and decree. When they paid the mortgage debt, as found by the decree affirmed, they were legally bound to pay it.

The contingency upon which their obligation depended had happened. Nor had they any equity as against the creditor to demand a marshaling of the securities, and that he should exhaust his remedy against the mortgaged premises before proceeding against the mortgagor's securities upon the ap-

Powell v. Allen.

peal bond.    That was just what the creditor was doing when they voluntarily intervened on behalf of the debtor, and arrested him by their obligation to pay the debt if the decree under which he was so proceeding should be affirmed.    Having taken their chance and failed, they were absolutely bound, in law and equity, to pay the debt without requiring a resumption of that proceeding or an assignment of the mortgage or decree; and since they paid no more nor otherwise than as so bound, the sum paid was in no sense a price nor the transaction a purchase, but the payment of a debt.

On the other hand the creditor was bound in equity, upon such payment, to give them the benefit of the security as fully as it could equitably operate, without any formal assignment. These securities were assignable only in equity, and equity itself assigned them, upon such payment, without further action on the part of the creditor or surety, but with a restricted effect which they could not by agreement extend as to third parties.

The mortgage and decree were satisfied as to the creditor, and therefore, he could not, by his act, keep them alive and subsisting for any purpose, though equity, without his act, would so keep them as against the principal debtor.    We hold therefore, that the instrument of assignment was unavailing, under the circumstances, to transfer the previous rights of the assignor in said mortgage and decree as against the liens of appellants.

The proceedings upon the supplemental bill, so called, we think were erroneous and properly set aside because the appellees were not made parties.    It was not proper to assume or find, without giving them an opportunity to be heard, that they paid the money as debtors and not as purchasers, with all consequent rights.    The complainants in that proceeding should pay the costs thereof.

But for the reasons above set forth the decree of the circuit court herein is in all other particulars reversed, and the cause remanded for further proceedings in conformity with this opinion.

Reversed and remanded.