## JOHN W. BISHOP & CO. *vs.* KENT & STANLEY COMPANY.

PROVIDENCE—AUGUST 4, 1898.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

The charter of a corporation provided that no mortgage of the corporate property should be made without the consent of the holders of record of at least seventy-five per cent. of the preferred and of the common stock; such a mortgage was made under the authority of a vote of a majority of the stock, but by a less majority than that required by the charter, and the corporation received the benefit thereof; at the following stockholders' meeting the records of the meeting at which the vote was passed were read and approved, and the mortgage was not afterwards questioned by the stockholders, but was so far

ratified that interest on the mortgage note was paid when the same became due ; subsequently the corporation was adjudged insolvent, and its assignee in insolvency sought to have the mortgage set aside :—

*Held*, that, as the making of the mortgage was within the power of the corporation, therefore, although the exercise of this power was not in accordance with the charter, yet the mortgage was not void, but only voidable.

*Held*, further, that this would have been the result even though the charter had provided that such a mortgage "should be void and of no effect."

*Held*, further, that the provision in the charter was manifestly for the benefit of the stockholders, and its purpose was sufficiently accomplished if they had the right of avoiding such an instrument.

*Held*, further, that the stockholders could waive this right and thereby make valid the mortgage that had been executed for their benefit.

*Held*, further, that, as the provision was solely for the benefit of the stockholders, the creditors of the corporation, represented by the assignee in insolvency, could not take advantage of the defect in the mortgage.

*Held*, further, that the stockholders, by acquiescing in the mortgage, would be estopped from setting up its invalidity if they were disposed to do so.

PETITION IN EQUITY to enforce a mechanic's lien. Heard on petition of a mortgagee to have a surplus from the sale appropriated towards his mortgage debt, and on the application of an assignee in insolvency to have the mortgage set aside.

TILLINGHAST, J. This case is now before the court upon the application of Stephen O. Edwards, assignee of the Kent & Stanley Company, Limited, who, upon his petition, has been made a party defendant, for a modification of the decree in said cause, by which the same was referred to a master to make sale of the premises described in the petition, in such manner that the net balance remaining in the hands of the master, after the payment of the amount of the petitioner's lien, shall be paid to him as such assignee; and also upon a similar application of Joshua S. Ingalls, who upon his petition has also been made a party defendant, and who claims to have a mortgage upon the premises described in the petition for the sum of $10,000 with accrued interest, and who asks that said decree may be so modified as to provide for the payment to him of so much of said net balance as is necessary to discharge said mortgage.

The defendant Edwards, as assignee, opposes the application of said Ingalls, upon the ground that the mortgage held

by him is invalid and that he has no right to a lien upon the premises therein described, or upon the proceeds of the sale of the premises in the hands of the master.

The material facts in the case are these: The Kent & Stanley Company, Limited, in consideration of the conveyance to it of all the property belonging to the Kent & Stanley Company, agreed to assume all the obligations of that company. Said Joshua S. Ingalls brought an action, in the United States Circuit Court for the District of Rhode Island, against the Kent & Stanley Company, to recover the sum of $21,000, which had been paid by him for treasury stock of that company, which he alleged he had been induced to purchase by false and fraudulent representations. Pending the trial of that case, it appearing to the satisfaction of the defendant's counsel therein that there was very little doubt that a verdict would be rendered against the company for the full amount of the plaintiff's claim with interest, and also that such a verdict would end the company—that is, that it would be unable to meet such a liability—they advised a settlement, believing that if a compromise could be effected, whereby a small part of the claim could be paid at once and the balance postponed for a considerable time, the company would be able to "weather the gale and get through." Thereupon an agreement was made between said Ingalls and the officers of the Kent & Stanley Company, Limited, and its counsel, by the terms of which the Kent & Stanley Company, Limited, was to pay Ingalls $1,500 in cash, $1,500 in unsecured notes of the company, and $10,000 in a note of the company secured by mortgage upon real estate, $1,000 to be payable each year from the date of the mortgage, which was December 22, 1896, and the balance at the end of five years from such date, with interest at 5 per cent., and also to issue to him sixty shares of the preferred stock at par; and thereupon the action was entered "settled."

In order to carry out this agreement a special meeting of the stockholders was duly called for January 5, 1897, at which meeting the total number of shares represented was 2,784, the record not showing what part of this was pre-

ferred and what part common stock.   1,773 shares voted in
favor of the proposition of settlement as above indicated, and
1,011 shares voted against it.   The vote was declared carried,
by the president, and subsequently the mortgage was exe-
cuted by the proper officers of the company, in pursuance of
the authority of said vote, and was delivered to said Ingalls,
and by him duly recorded.

On January 20, 1897, the annual meeting of the stock-
holders of said company was held, at which, amongst other
things, the records of the last meeting—the one first above
referred to—were read and approved.   After the holding of
said first mentioned meeting, Messrs. Wilson and Jenckes,
of counsel for the defendant, notified said Ingalls that the
mortgage in question had been duly approved by the stock-
holders.   June 21, 1897, the said company paid the interest
on said mortgage note for six months, amounting to $250.
Since the said meeting of the stockholders at which said vote
of settlement was passed no stockholder of the company has
made any objection to the giving of said mortgage or the
making of the settlement.

Section 4 of the charter of the defendant corporation pro-
vides as follows :

"Sec. 4.   The holders of preferred and common stock
issued under authority of this act shall have an equal voice
in the management of the corporation on all questions of
majorities and quorums, and no bond of this company shall
be issued, nor shall any mortgage be made upon any of its
property, without the consent of the holders of record of at
least 75 per cent. of the preferred and of the common stock."

At the time of the meeting on January 5, 1897, the capital
stock of the company consisted of 2,940 shares of preferred
and 2,000 shares of common stock.

On December 3, 1897, a receiver of the corporation was
appointed, and on January 15, 1898, the corporation filed
its voluntary petition in insolvency.   It has since been ad-
judged insolvent, and the defendant Edwards has been ap-
pointed assignee.

In view of the foregoing facts, the question raised is

whether said mortgage is valid.   The defendant Edwards claims that it is not, but that it is absolutely null and void because it was made without the consent of the ·holders of the requisite amount of stock.   The defendant Ingalls, on the contrary, claims that the mortgage is valid on the grounds :   (1) That the corporation is estopped to deny its validity—that one dealing with a corporation has a right to presume that instruments duly executed by the officers, and within the scope of the powers of the corporation, are duly authorized ; (2) That a corporation receiving the benefit of a mortgage is estopped to deny its validity ; (3) That neither the creditors nor the assignee in insolvency can question the mortgage ; and (4) That acquiescence by the corporation ratifies the mortgage.

We think it is very clear, in the first place, that the mortgage in question is not void, but, at most, only voidable.   The making thereof was unquestionably an act within the scope of the corporate powers of the defendant company, although the power to give the mortgage was not exercised in accordance with the charter.   *Haynes* v. *Covington*, 21 Miss. 408 ; *City of Memphis* v. *Gas Co.*, 53 Tenn. 543 ; *Whitman Gold· & Sil. Mining Co.* v. *Baker*, 3 Nev. 386 ; *Miner's Ditch Co.* v. *Zellerback*, 37 Cal. 543.

Indeed, even if the charter had expressly provided that a mortgage given without the consent of the holders of the requisite amount of stock "*should be void and of no effect*," there is abundance of authority to the effect that then it would be only voidable.   *Beecher* v. *Marq. & Pacific R. M. Co.*, 45 Mich. 103 and cases cited ; *Bowen* v. *Johnson*, 17 R. I. 779 ; *Colt* v. *Sears Com. Co.*, 20 R. I. 64 ; *Pearsoll* v. *Chapin*, 44 Pa. St. 11–17 ; *Green* v. *Kemp*, 13 Mass. 515 ; *Harvey* v. *Varney*, 98 Mass. 118 (120).   See also *State* v. *Richmond*, 26 N. H. 232 (237–9).

The reason upon which these and other similar cases are based is that where the evident intention of the statute is to furnish protection to certain determinate individuals, and no question of public policy is involved, the purpose of the statute is sufficiently accomplished if such persons are given

the liberty of avoiding it.    The statute in the case at bar was manifestly passed for the protection of the stockholders of the defendant corporation only.    The corporate property, represented by both the preferred and common stock, was not to be encumbered without the consent of stockholders holding at least three-fourths of said stock.    Hasty and ill-considered action would thus be avoided, and the will of the large majority of the stockholders only would control.    But while it was clearly the right of the stockholders to insist upon the strict observance of said provision, as it was made solely for their benefit, they could undoubtedly waive their right to such observance and thereby make valid and binding what otherwise would not have been binding upon them.    See *Bank* v. *Oriental Mills*, 17 R. I. 551.

No stockholder in the defendant corporation has taken any steps to avoid the mortgage in question; although more than a year and a half has elapsed since it was given, the records of the meeting at which it was voted to give the same were duly approved by the stockholders present at the next meeting thereof, which was the annual meeting—see *Aurora Society* v. *Paddock*, 80 Ill. 263; (although it should here be stated that the holders of the required amount of stock to approve the giving of a mortgage were not present at said annual meeting) and the corporation itself has ratified the act to the extent of paying the first installment of interest on the mortgage.    Moreover, the mortgage was given for a valuable consideration, and no question is made that the parties thereto acted in the utmost good faith in the entire transaction.    In view of these facts it is clear, we think, that, so far as the corporation is concerned, the mortgage is a valid and binding instrument.    *Railway Co.* v. *Gentry*, 69 Tex. 625; *Campbell* v. *Mining Co.*, 51 Fed. Rep. 1, Thompson Corp. Sec. 6159; *Boyce* v. *Gas Coal Co.*, 37 W. Va. 73; *Railway Companies* v. *Bridge Co.*, 131 U. S. 371; *Boston, etc., R. R.* v. *New York, etc., R. R.*, 13 R. I. at page 265.

The only remaining question which we need to consider, therefore, is whether the creditors of the corporation, who are represented by the assignee, can take advantage of the

defect in the mortgage. The answer to this question depends upon the construction to be put upon the charter provision above recited. Does it include creditors, or does it apply solely to the stockholders of the corporation? We think, as already intimated, that it was enacted solely for the protection and benefit of the stockholders, and hence that creditors of the corporation cannot be heard to question the validity of the mortgage on the ground that the requisite amount of stock was not represented. *Harvey* v. *Railway Co.*, 28 Fed. Rep. 169, is clearly in point. There the creditors of the company, who were parties to the bill, contended that in the execution of the mortgages in question certain requirements of the statute of Illinois were not observed, and consequently that said instruments were void. But the court —Harlan, J., delivering the opinion—held that the objection could not avail for several reasons, one of which was that as the railroad company admitted the execution and delivery of the mortgage, "it must, *as between the company and its creditors*, be deemed a valid instrument." "The provision in the act of 1872," said the court, "making the assent of a given number of stockholders essential to the validity of a mortgage, is primarily, if not exclusively, for the benefit of stockholders. If it be conceded that stockholders of a railroad corporation, formed under the act of 1872, could, as against *bona fide* holders of bonds secured by a mortgage executed by such corporation, defeat a mortgage not executed with the express assent of the requisite number of stockholders, it does not follow that the creditors of the corporation could raise any such question. Under the circumstances disclosed by the record, the stockholders of the Paris & Terre Haute Railroad Company are estopped to say the mortgage is not a valid security, according to its terms, for the payment of the bonds intended to be secured by it. Much less can creditors urge such an objection, particularly when the state has not, by any direct proceeding, questioned the validity of the mortgage under the act of 1872."

In *Watt's Appeal*, 78 Pa. 370 (394), the court states the law thus: "When an act done by directors is in excess of

their authority, yet if it has been done with the *bona fide* intent of benefiting the corporation which they represent, and a shareholder knowing thereof does not dissent within a reasonable time, his assent to the act will be presumed, and he will be estopped from gainsaying it."

Mr. Jones, in his work on Real Property, Sec. 153, says: "A mortgage by a corporation made without the assent or vote of a certain portion of its stockholders, as required by statute, can be attacked only by the corporators. Objection to its validity cannot be made by the corporation itself in defence to a suit to foreclose the mortgage. Such a provision is for the protection of the stockholders, and they alone are wronged by the execution of a mortgage in violation of the statute, and they alone can raise the question of the validity of the mortgage."

Mr. Beach, in his work on Private Corporations (Sec. 744), says: "The corporators, and no one else, can raise objections to proceedings under acts restricting the power of the directors to mortgage."

See also *Thomas* v. *Railway Co.*, 104 Ill. 462 ; *Fountaine* v. *Railway Co.*, 5 L. R. Eq. 323 ; *Gano* v. *Railway Co.*, 60 Wis. 15 ; *In re Romford Canal Co.*, 24 L. R. 92.

We are of opinion, also, that, in view of the facts appearing in the case at bar, the stockholders, by acquiescing in the mortgage in question, would now be estopped from setting up its invalidity, even if they were disposed to do so, which they evidently are not. *Sheldon Co.* v. *Eickemeyer Co.*, 90 N. Y. 607. It is true that knowledge of the giving of the mortgage on the part of all the stockholders is not shown, but it may be presumed from the settlement of the suit aforesaid and the record of the mortgage.

We are aware that there is some conflict of authority upon the question hereinbefore considered as to the validity of a mortgage or other contract which is not made and executed in strict compliance with the charter provision ; but we think the decided preponderance thereof at the present time is in accordance with the doctrine above stated. And, moreover, as said by the court in *Campbell* v. *Mining Co.*, 51 Fed.

Rep. 1, in commenting on the cases which take the view that a contract not made in strict accordance with the charter requirement is void: "In considering these cases the conclusion would be reached that where the officers of a corporation had not proceeded in the manner provided by law, their acts would be void. But there appears to have been drawn a distinction between cases where the corporation has no power to act and those where it has such power, but fails to perform the acts in question in the mode or manner provided by law. In the former the acts are void; in the latter voidable."

This distinction is also recognized in *Zabriskie* v. *Railway Co.*, 23 How. on p. 398. See also *Wood* v. *Water Works Co.*, 44 Fed. Rep. 146 (150); *Railway Co.* v. *Bridge Co.*, 131 U. S. 371.

We therefore decide that the defendant Ingalls is entitled to be paid the amount due on his said mortgage out of the funds in the hands of the assignee, before declaring a dividend in favor of the other creditors.

*Edward D. Bassett and Edward L. Mitchell*, for petitioners.

*Charles A. Wilson and Thomas A. Jenckes*, for respondents.

*Samuel Norris, Jr., James Tillinghast, William R. Tillinghast and Theodore F. Tillinghast*, for mortgagees.

*Richard B. Comstock and Rathbone Gardner*, for assignee in insolvency.