# United States Court of Appeals
## For the First Circuit

No. 03-1208

EPIMENIO SOTO-NEGRÓN; AIDA L. POLANCO-LAFONTAINE,

Plaintiffs, Appellants,

v.

TABER PARTNERS I,

Defendant, Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., U.S. Senior District Judge]

Before

Lynch, Lipez, and Howard, Circuit Judges.

Maximiliano Trujillo-Gonzalez was on brief for appellants.

Godwin Aldarondo-Girald and Aldarondo Girald Law Office were on brief for appellee.

August 7, 2003

**LYNCH**, **Circuit Judge**.  Plaintiffs brought this action under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1962 (2000), against the defendant, claiming that it improperly cashed a series of checks written to another party.  The defendant filed a motion to dismiss for failure to state a claim, which the district court granted.  We affirm on the grounds that the alleged actions do not constitute a pattern sufficient to state a claim under RICO.

I.

A.  Factual Background

We describe the facts as found in plaintiffs' complaint, which we take as true when considering a motion to dismiss for failure to state a claim.  Abbott v. United States, 144 F.3d 1, 2 (1st Cir. 1998).  We also consider the checks entered into evidence by plaintiffs.  Because they were submitted to the district court by plaintiffs and are central to their claim, we take them into account without needing to convert the proceeding into one for summary judgment.  See Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993).

Epimenio Soto-Negrón and his wife, Aida L. Polanco-Lafontaine, purchased six official checks in amounts varying from $2,500 to $4,000.  The total amount was $19,100.  The complaint asserts that the checks were issued to the order of "a U.S. Government agency," namely the U.S. Marshals Service, and were

"prepared for transactions with the United States Government." The checks, though, contradict this assertion and are actually made out to "Mauricio Vazquez, U.S. Marshall Services" (with some variations on how the entity's name is spelled). All are dated between March 27 and April 3, 2000.

The checks were cashed by the defendant, Taber Partners I, which owns and controls the Radisson Ambassador Plaza Hotel and Casino, among other properties. The checks were converted to private use, even though, the complaint alleges, the checks were issued to a U.S. government agency. Of the six checks, it is only ascertainable from the copies in evidence when four of them were paid; those four were paid between March 27 and March 31, 2000. It is a reasonable inference that the other two checks were also cashed around that time. The complaint does not specify the dates of the transactions.

B. Procedural History

On October 1, 2001, the plaintiffs filed an action against Taber Partners I in federal district court under RICO, 18 U.S.C. § 1964(c). The complaint alleged that the defendant's cashing of checks meant for the United States government violated various statutes, including 18 U.S.C. §§ 495 (forgery with intent to defraud the United States) and 641 (conversion of public monies), and constituted an illegal pattern of racketeering conduct

under RICO. The complaint requested restitution of the amount of the checks, trebled under RICO, and attorneys' fees.

Plaintiffs served the summons on October 9, 2001. Taber did not respond, so the district court entered default judgment against it on December 11, 2001. Taber filed a motion in opposition to entry of default on April 30, 2002, claiming that the complaint was served on an employee of the Ambassador Plaza Hotel and that as a result, the partnership had not learned of the complaint until the previous day. It moved to vacate the entry of default on May 9, and the district court granted this request on May 13.

On August 7, 2002, Taber moved to dismiss the complaint on three grounds. First, it argued that it was never properly served with the complaint.[1] Second, Taber contended that because the checks were made payable to a private entity, cashing the checks was not in fact illegal, and therefore there was no RICO

---

[1] The person served was the Comptroller and Treasurer of the hotel. Fed. R. Civ. Proc. 4(h) specifies that when a partnership is served, a copy of the summons and complaint must be delivered "to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." Taber argued that the Comptroller was not authorized to receive service. Plaintiffs countered that Taber is estopped from making this argument because, as a foreign partnership, it had not registered with the Puerto Rico State Department and notified it of who is designated to receive summons, as it was required to do under Puerto Rico law.

The district court did not explicitly rule on Taber's motion to dismiss for insufficiency of service, and neither party raises the issue on appeal.

violation.[2]  Third, it argued that there was no illegal pattern of conduct within the meaning of RICO, because the check cashing was an isolated event, not a pattern of events over an extended period of time.

On December 11, 2002, the district court dismissed the complaint.  It found that because "the predicate acts at issue extend only over one week," and because there was no threat of future criminal conduct, the complaint did not allege a RICO violation.  Soto-Negrón v. Taber Partners I, 235 F. Supp. 2d 105, 108-09 (D.P.R. 2002).  Plaintiffs appeal this dismissal.

II.

We review de novo a district court's dismissal of a complaint for failure to state a claim.  Chute v. Walker, 281 F.3d 314, 318 (1st Cir. 2002).  When reviewing the grant of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[w]e accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory."  Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 6 (1st Cir. 2002).  We

---

[2] Taber bases this argument on two grounds: first, that the checks named an individual, Mauricio Vazquez, and that the checks were therefore payable to that person, not a federal agency; and second, that the "U.S. Marshall Services" refers not to a federal agency but to "a corporation dedicated to the sale of motor vehicles."

need not, however, accept as true all facts in the complaint: "We exempt, of course, those 'facts' which have since been conclusively contradicted by plaintiffs' concessions or otherwise . . . ." Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987).

RICO makes it unlawful, inter alia, "for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in . . . a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "To state a claim under section 1962(c), a plaintiff must allege each of the four elements required by the statute: (1) conduct (2) of an enterprise, (3) through a pattern (4) of racketeering activity." N. Bridge Assocs., Inc. v. Boldt, 274 F.3d 38, 42 (1st Cir. 2001); see Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985).

Like the district court, we bypass the issue of whether there was any racketeering activity at all and focus instead on whether that activity constituted a pattern under RICO. While the definition of a "pattern" was meant to be flexible, mere "sporadic activity" is not enough. H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989) (quoting S. Rep. No. 91-617, at 158 (1969)). To establish a pattern, a plaintiff must show both a relationship among the predicate acts and continuity. Id. Acts are related if they have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are

interrelated by distinguishing characteristics and are not isolated events."  Id. at 240, quoted in Efron v. Embassy Suites (P.R.) Inc., 223 F.3d 12, 15 (1st Cir. 2000).  Continuity requires that "the related predicates amount to or pose a threat of continued criminal activity." H.J., 492 U.S. at 239.  Plaintiffs may satisfy the continuity requirement either by evidence of "a series of related predicates extending over a substantial period of time," id. at 242, or by evidence that the acts "include a specific threat of repetition extending indefinitely into the future" or "form part of an ongoing entity's regular way of doing business," id.

Plaintiffs' complaint fails to meet the RICO continuity requirement.  The six checks at issue are all dated within a week of each other.  The four dates of payment known to us are all within a single five-day period.  This time frame is too narrow to meet the continuity requirement. See Fleet Credit Corp. v. Sion, 893 F.2d 441, 446 (1st Cir. 1990) ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy the [continuity] requirement." (quoting H.J., 492 U.S. at 242)).  That multiple instances of wrongful behavior are alleged is of no consequence. See Sys. Mgmt., Inc. v. Loiselle, 303 F.3d 100, 105 (1st Cir. 2002) ("RICO is not aimed at a single narrow criminal episode . . . ."); Apparel Art Int'l, Inc. v. Jacobson, 967 F.2d 720, 723 (1st Cir. 1992) ("[A] single episode does not constitute a 'pattern,' even if that single episode involves

behavior that amounts to several crimes (for example, several unlawful mailings).").

Nor does the complaint allege a threat of repetition. Plaintiffs do not claim that the acts alleged are part of Taber's "regular way of doing business," nor that this activity is in any danger of continuing. Without the threat of an "open ended" pattern of racketeering activity, the complaint cannot overcome the narrow time period alleged. See Sys. Mgmt., 303 F.3d at 106.

### III.

The judgment of the district court is **affirmed**. Costs are awarded to defendant.