Eleanor T. JEROME

v.

**PROBATE COURT OF the TOWN OF BARRINGTON et al.**

No. 2006-123-A.

Supreme Court of Rhode Island.

May 17, 2007.

John C. Revens, Jr., Esq., Warwick, for Plaintiff.

Stephen R. White, Esq., Warwick, for Defendant.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

### OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court for oral argument on January 30,

2007, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown. Accordingly, we shall decide this case without further briefing or argument.

The plaintiff, Eleanor T. Jerome (plaintiff or life tenant), has appealed from a judgment of the Superior Court affirming an order of the Barrington Probate Court that apportioned attorneys' fees and expenses of administration between plaintiff as life tenant and the remaindermen, in accordance with their respective interests in a condominium that the Barrington Probate Court ordered be sold.

The underlying facts of this case are not in dispute. The decedent, Lido Jerome (decedent or Jerome), died intestate in Massachusetts on July 4, 2000.[1] The only Rhode Island asset was an office condominium in Barrington that was valued at $85,000. The decedent was survived by plaintiff, his wife of many years, as well as two sisters, Dora Creech (Creech) and Olga Shultz (sisters), and two nieces, Tina Jerome and Michale James (nieces) (collectively remaindermen).

Under the law of this state, when an owner of real property dies intestate, his or her surviving spouse is entitled to a life estate in the property, and the remainder interest passes to his or her heirs at law—in this case, Jerome's sisters and nieces.[2] However, in accordance with G.L. 1956 § 33–25–5, a surviving spouse may petition the Probate Court to fix the present value of the life estate and order it sold, with payment of the present value to the surviving spouse and the difference to the remaindermen.

In June 2002, the life tenant and remaindermen reached an agreement, with the approval of the Probate Court, for the sale of the condominium for $85,000.[3] The parties further agreed, in accordance with § 33–25–5, that the proceeds of the sale of the condominium would be apportioned 68.143 percent for the life estate, and 31.857 percent for the remaindermen. In dividing the proceeds of the sale, the life tenant's share was $57,921.55 (68.143 percent of $85,000), while the remaindermen were allocated $27,078.45 (31.857 percent of $85,000).[4]

As the administratrix of Jerome's estate, plaintiff prepared a final accounting, including expenses of administration that totaled $22,931.63.[5] She applied those ex-

---

**1.** We note the irony in this, Lido Jerome's final appearance in our case law, arising in connection with the disposition of his real estate. A Westlaw search revealed that the same Lido Jerome had been, as of 1997, "in the real estate appraisal business for thirty-five years," was qualified by the Rhode Island Superior Court to give testimony as a real estate appraiser, and had appeared as an expert witness in several cases. *Capital Properties, Inc. v. State*, C.A. No. 88–1654, 1997 WL 839896 at *9 (R.I.Super., Mar.5, 1997); *see also Hillsgrove Realty Corp. v. Director of Public Works for State of Rhode Island*, M.P. No. 10312, 1975 WL 169911 at *2 (R.I.Super., July 23, 1975).

**2.** *See* G.L.1956 § 33–1–5, and G.L.1956 §§ 33–25–2(a) and 33–25–3.

**3.** Although the parties eventually agreed to sell the property for $85,000, one of the sisters apparently opposed the sale, and then objected to the sale price. It is alleged that these efforts drove up the legal fees to approximately $22,000, a quarter of the selling price of the only asset in this ancillary administration.

**4.** The expenses of the sale were apportioned between the life tenant and remaindermen 68:32; the apportionment of those expenses is not disputed.

**5.** The expenses of administration include $20,600 in legal fees and $1,681.63 in out-of-

penses only to the remainder estate. The remainderman Creech objected and argued that it was inequitable to apply all of the expenses and attorneys' fees to their interest. The probate judge agreed, and allocated the payments between the parties on a 68:32 ratio.[6] The Probate Court judge entered an order fixing the remaindermen's share at $19,740.33; plaintiff appealed that order to the Superior Court.

Upon agreement of the parties, the appeal was heard by a justice of the Superior Court.[7] The only issue before the trial justice was whether the probate judge erred in allocating the expenses of administration between the life tenant and remaindermen in accordance with the agreed upon ratio of payment. The hearing justice considered the parties' briefs and arguments and entered an order and a judgment affirming the decision of the Probate Court.[8] It is from this judgment that plaintiff appeals.

██ We note that common law principles of dower and curtesy have almost universally been abolished. In most states, statutory substitutions for dower and curtesy dictate that when a decedent dies intestate and without issue, the surviving spouse receives the entire estate; in Rhode Island, however, the surviving spouse receives only a life estate in the real property, along with $50,000 and one-half of the personal property. See *Barrett v. Barrett*, 894 A.2d 891, 895–96 (R.I.2006). *Compare* G.L.1956 §§ 33–1–5, 33–1–10, and 33–25–2 (under Rhode Island law, if an intestate dies without issue, the surviving spouse gets a life estate in the real property, the first $50,000, and one-half of the remainder of personal property) *with* Restatement (Third) *Property: Wills & Other Donative Transfers* § 2.2 (2006) (discussing various state statutes regarding intestate share of the surviving spouse) *and* Unif. Probate Code § 2–102(1) (revised 1990), 8 U.L.A. 81 (1998) (surviving spouse gets entire intestate estate if decedent has no descendants or parents) *and* Unif. Probate Code § 2–102(1) (pre–1990 version), 8 U.L.A. 274 (1998) (surviving spouse gets entire intestate estate if no surviving issue or parents).

The Rhode Island statutory scheme that grants the surviving spouse a life estate in the intestate's real property also requires that *"[t]he life estates* provided in this chapter * * * *shall take precedence* over any claims of creditors of the decedent or decedent's estate, *except claims secured by lien or any form of encumbrance* on the real estate." Section 33–25–3 (emphases added). Additionally, § 33–25–2(a) provides that the life estate shall pass to the surviving spouse "subject, however, to any

---

pocket expenses. The remaindermen initially objected to these amounts, but that objection was later withdrawn, and the issue is not presently before us.

**6.** The probate judge used 68.143 percent and 31.857 percent to determine the initial percentages of the $85,000—but used the rounded percentages (68 percent and 32 percent) to compute the allocation of the expenses. Thus, 68 percent of the costs, or $15,593.51, was attributed to the life tenant, and the remaindermen were charged 32 percent of the costs, or $7,338.12. This calculation resulted in the remaindermen's final share of $19,740.33 ($27,078.45–$7,338.12), and the

life tenant's share of $42,328.04 ($57,921.55–$15,593.51).

**7.** Under G.L.1956 § 33–23–9, a probate appeal can be heard by a jury or in a bench trial, or at a hearing on the formal and special cause calendar. The parties elected the latter procedure, and their case was decided on the basis of the parties' memoranda and arguments before a justice of the Superior Court.

**8.** No transcript of the Superior Court justice's bench decision was provided to this Court.

*encumbrances existing at death * * *."* (Emphasis added.)

Before the Supreme Court, the parties have taken opposing positions respecting what constitutes an encumbrance or lien. The life tenant argues that there were no encumbrances existing at the time of decedent's death and that the expenses of administration are not claims secured by a lien. The remaindermen, on the other hand, renew their contention that the expenses of administration are akin to a mortgage lien, but fail to point to any authority to support this assertion, nor do they address the requirement that the encumbrance exist at the time of decedent's death.

This Court reviews questions of statutory interpretation *de novo*. *Webster v. Perrotta*, 774 A.2d 68, 75 (R.I.2001) (citing *Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates*, 763 A.2d 1005, 1007 (R.I.2001)). The Supreme Court's goal in interpreting a statute is to discern the meaning intended by the Legislature, especially where the words used in the statute are not defined. *Barrett*, 894 A.2d at 897 (citing *Webster*, 774 A.2d at 75 and *D'Amico v. Johnston Partners*, 866 A.2d 1222, 1224 (R.I.2005)). When a statute is "unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I. 1996). In performing this function, this Court looks to the statutory scheme as a whole, and examines the statute in context. *In re Brown*, 903 A.2d 147, 149–50 (R.I. 2006).

Reading §§ 33–1–5, 33–25–2(a) and 33–25–3 together, as we are required to do, it is clear that when a decedent dies intestate, his or her surviving spouse is entitled to a life estate in the decedent's real property, subject *only* to any encumbrance or secured lien on the property that existed *at the time of death*. Although the terms "encumbrance" and "lien" are not defined, the statutes are not ambiguous; these terms have a particular meaning in our law. Generally, an "encumbrance" is a claim to property, including a lien, and a "lien" is a legal right to property, as security for a debt.[9]

There is no authority for the proposition that expenses of the administration of a probate estate constitute a lien or an encumbrance on real property. These expenses, including legal fees and out-of-pocket expenses, are separate and apart from the closing costs associated with the sale, which properly were allocated between the parties. The very language of §§ 33–1–5, 33–25–2(a), and 33–25–3, demonstrates that it was the Legislature's intention to have the life estate take precedence over all but a limited class of debts and claims—those existing at death. There can be no doubt that attorneys' fees and out-of-pocket expenses incurred during the administration of Jerome's probate estate did not exist at the time of his death and should be paid from the remainder interest.

Finally, the remaindermen argue that plaintiff, as a life tenant, was a quasi-trustee for the remaindermen and, as such, was prohibited from committing waste of the remaindermen's interest. Thus, they contend, the life tenant is obliged to allo-

---

**9.** "Encumbrance" is defined as "[a] claim or liability that is attached to property or some other right and that may lessen its value, such as a lien or mortgage; any property right that is not an ownership interest." Black's Law Dictionary 568 (8th ed.2004). "Lien" is defined as "[a] legal right or interest that a creditor has in another's property, lasting usu[ally] until a debt or duty that it secures is satisfied." *Id.* at 941.

cate the expenses of administration between the parties. The cases cited by the remaindermen are of no assistance to the Court, and we decline to address them. There is no merit to the remaindermen's contention that allocating attorneys' fees to the estate is an abuse of a trustee's fiduciary duty or otherwise constitutes waste of the remainder interest.

Accordingly, we vacate the judgment of the Superior Court, and remand this case with instructions to enter a judgment allocating the $22,931.63 in expenses of administration solely against the remainder interest, in accordance with this decision.