# United States Court of Appeals
## For the First Circuit

No. 14-1448

DEBORAH A. LISTER; LEON ALAN BLAIS,

Plaintiffs, Appellants,

v.

BANK OF AMERICA, N.A., in its own right and as successor by merger to BAC Loan Servicing, Inc.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; HOMEWARD RESIDENTIAL, INC., in its own rights and as successor to American Home Mortgage Servicing, Inc.; OCWEN LOAN SERVICING, LLC,

Defendants, Appellees,

NEIL F. LURIA, in his capacity as Liquidating Trustee of Chapter 11 Estate of Mortgage Lenders Network, USA, Inc.,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Howard, Selya, and Stahl,
Circuit Judges.

Leon A. Blais, with whom Blais & Parent was on brief, for appellants.
Maura K. McKelvey, with whom Marissa I. Delinks and Hinshaw & Culbertson LLP were on brief, for appellees Mortgage Electronic

Registration Systems, Inc.; Homeward Residential Inc., in its own right and as successor to American Home Mortgage Servicing, Inc.; and, OCWEN Loan Servicing, LLC.

Joseph F. Yenouskas, with whom George R. Schneider and Goodwin Procter LLP were on brief, for appellee Bank of America, N.A.

————————————

June 12, 2015

————————————

**HOWARD**, **Circuit Judge**.  Claiming uncertainty as to which entity holds an enforceable mortgage on their home, Deborah Lister and Leon Blais filed suit against numerous potential mortgagees.[1] The district court subsequently granted defendants' motions to dismiss for failure to state a claim.  See Lister v. Bank of America, N.A., 8 F. Supp. 3d 74 (D.R.I. 2014).  Lister and Blais timely appealed, asserting several claims of error.  We affirm the dismissal, although for different reasons than those offered by the district court.

## I.

As we are reviewing the grant of a motion to dismiss, we recite the facts as alleged in the complaint and documents incorporated therein by reference.[2]  Grajales v. P.R. Ports Auth.,

---

[1]  Lister and Blais are married.  Lister is the homeowner of record and Blais asserts a leasehold interest in the subject property.  Blais, an attorney, represents Lister and also appears pro se.  For the sake of shorthand, we may occasionally refer to both appellants by the first-named plaintiff, Lister.

[2]  Appellants take issue with the district court's consideration of certain land records that appellees appended to their motions to dismiss below.  Their argument is misplaced.  The district court acted well within its discretion when it examined copies of land records that were expressly referred to in the complaint.  See Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 16-17 (1st Cir. 1998).  Their claim rings especially hollow in light of the fact that they also attached documents to the complaint suggesting that certain mortgage-related evidence did not exist.

682 F.3d 40, 44 (1st Cir. 2012).  In October 2000, Lister purchased a parcel of property in Lincoln, Rhode Island, and recorded her interest in the Town of Lincoln's Land Evidence Records.  In 2006, Lister refinanced and secured a new mortgage with Mortgage Lenders Network ("MLN").  Lister alleges that neither the note nor the mortgage were executed, witnessed, or notarized, and that she does not have any recollection of signing the mortgage.  Nevertheless, she began making payments to the address listed on a document entitled "First Payment Notice."  After MLN filed for bankruptcy in Delaware, Lister received notice to forward her mortgage payments to Bank of America, and she did so.

In 2008, Lister "grew suspicious" about the handling of the note and mortgage so she "slowed" her payments.  In November 2008, Countrywide Home Loans contacted Lister and threatened to foreclose.  Shortly thereafter, Harmon Law Offices contacted Lister and informed her that it represented Countrywide and reiterated the foreclosure threat.  On November 5, 2008, Blais demanded verification from Harmon under the Fair Debt Collection Practices Act and requested an accounting of funds previously paid. Almost two years later, on September 10, 2010, under continued threats of foreclosure, Blais again requested verification and an accounting.  Each request was ignored and Harmon pressed forward with foreclosure proceedings until Mr. Blais threatened to

- 4 -

initiate a lawsuit against Harmon and its attorneys. On November 4, 2010, Harmon "put on hold" the scheduled foreclosure sale. The parties agree that there is no foreclosure currently pending.

Eventually, defendant Homeward began to communicate with Lister, but ignored Blais's requests for verification. Lister's most recent communication regarding the mortgage (at least before this suit was initiated) came from defendant OCWEN, which inserted itself as the loss payee on Lister's homeowner insurance policy.

In an attempt to determine the note holder, Lister wrote to the liquidating trustee of MLN, who explained that after filing for bankruptcy, all of MLN's documents had been destroyed. Plaintiffs allege that since MLN's documents were destroyed, and subsequent "holders" are not able to produce the documents, then it is unlikely that the documents exist.

Plaintiffs filed suit, alleging three causes of action. Count I seeks "Interim Relief," in which they agree to sell the house and place the proceeds in the court registry or in escrow, from which the debt to the holder of the note will later be satisfied. In Count II, they seek "Quieting of Title" in order to nullify the note and mortgage. In Count III, they request a "Credit Reporting," where the court would declare that plaintiffs owe nothing to defendants and that defendants would remove all delinquent reports from their credit.

In ruling on defendants' motions to dismiss, the district court directly considered only Count II (quiet title), determining that it would be dispositive of the other counts. After first rejecting Lister's claim that the mortgage and note were void for never having been executed (executed copies were attached to defendants' motions), the court went on to reach several other legal conclusions: first, that plaintiffs' assertion that the note was unenforceable because it cannot be produced is contrary to Rhode Island law; second, that the facts alleged in the complaint were insufficient to give plaintiffs' standing to challenge the assignment of the mortgage; and finally, that the mortgage was enforceable.

This timely appeal followed.[3]

## II.

"Dismissal for failure to state a claim is appropriate if the complaint does not set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Lemelson v. U.S. Bank Nat'l Ass'n, 721 F.3d 18, 21 (1st Cir. 2013) (internal

---

[3] Pursuant to a request made at oral argument before this court, the appellees provided Lister with updated information respecting the holder of the note. Those documents, submitted to us via a Fed. R. App. P. 28(j) letter, state that Freddie Mac is the current owner of the note, though its counsel is holding the instrument on its behalf.

- 6 -

quotation marks omitted).  We review the district court's Rule 12(b)(6) dismissal de novo, construing all factual allegations in the complaint in the light most favorable to the non-moving party to determine if there exists a plausible claim upon which relief can be granted.  Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1, 7 (1st Cir. 2014).  In so doing, however, we disregard facts which have been "conclusively contradicted by [plaintiffs'] concessions or otherwise."  Id. (quoting Soto-Negrón v. Taber Partners I, 339 F.3d 35, 38 (1st Cir. 2003)).  As especially relevant here, we will consider documents incorporated by reference into the complaint and matters of public record.  Id. (citing Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008)).  Finally, the district court's rationale is not binding on appeal, and its ruling may be affirmed on any basis apparent from the record.  Freeman v. Town of Hudson, 714 F.3d 29, 35 (1st Cir. 2013).  Against this backdrop, we turn to the appellate matters at hand.

## III.

We start our analysis by quickly disposing of an array of issues that appellants raise -- or fail to raise -- in their briefs.  First, appellants argue that discovery is needed to allow them to uncover facts to support their claims.  In so doing, however, they ignore the fundamental premise of Rule 12(b)(6), i.e., that the plaintiff must set forth sufficient factual matter

- 7 -

to state a claim for relief that is plausible on its face.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  As will be discussed below, Lister fails to do so and discovery would not alter that conclusion.

Next, appellants suggest that rather than employing the Rule 12(b)(6) legal framework described above, the district court should have instead judged the complaint on what they call "the extraordinarily low standard of [Rhode Island's] title quieting statute."  We should thus not impose a "requirement to cite to dispositive facts in the complaint."  Appellants' position flies in the face of clear precedent, which holds that "state pleading requirements, so far as they are concerned with the degree of detail to be alleged, are irrelevant in federal court even as to claims arising under state law."  Andresen v. Diorio, 349 F.3d 8, 17 (1st Cir. 2003) (citing Hanna v. Plumer, 380 U.S. 460, 466-74 (1965)); see also Chhun v. Mortg. Elec. Registration Sys., Inc., 84 A.3d 419, 422 (R.I. 2014) (acknowledging that the federal standard for surviving motions to dismiss is more stringent than the traditional Rhode Island standard).

As a final housekeeping matter, we note that while the district court dismissed the complaint in its entirety, appellants offer no argument with respect to Counts One ("Preliminary Relief")

and Three ("Credit Reporting").  We therefore deem those claims waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

**IV**.

This leaves only Count Two, "Quieting of Title," before us on appeal.  Pursuant to Rhode Island law:

> Any person or persons claiming title to real estate, or any interest or estate, legal or equitable, in real estate . . . may bring a civil action against all persons claiming, or who may claim, and against all persons appearing to have of record any adverse interest therein, to determine the validity of his, her, or their title or estate therein, to remove any cloud thereon, and to affirm and quiet his, her, or their title to the real estate.  The action may be brought under the provisions of this section whether the plaintiff may be in or out of possession and whether or not the action might be brought under the provisions of § 34-16-1 or under the provisions of any other statute.

R.I. Gen. Laws § 34-16-4 (1956).[4]

By its own terms, the Rhode Island statute requires defendants in a quiet title action to have "an adverse interest"

---

[4] In Rhode Island, the statute is often utilized when challenging an easement, see, e.g., Caluori v. Dexter Credit Union, 79 A.3d 823 (R.I. 2013), or in the context of an adverse possession, see, e.g., McGarry v. Coletti, 33 A.3d 140 (R.I. 2011).

to that of the plaintiff.  See also R.I. Gen. Laws § 34-16-5 (requiring quiet title complaint to contain, inter alia, "[a] recital of the character and source of the claims adverse").  In this specific case, the facts alleged in the complaint are insufficient to make out a plausible showing of such an interest (and, thus, are insufficient to state a claim upon which relief can be granted).[5]

"Rhode Island is a title-theory state, in which 'a mortgagee not only obtains a lien upon the real estate by virtue of the grant of the mortgage deed but also obtains legal title to the property subject to defeasance upon payment of the debt.'" Bucci v. Lehman Bros. Bank, FSB, 68 A.3d 1069, 1078 (R.I. 2013) (quoting 140 Reservoir Ave. Assoc. v. Sepe Inv., LLC, 941 A.2d 805, 811 (R.I. 2007)).  Put another way, the title theory of mortgage law "splits the title [to a property] in two parts:  the legal title, which becomes the mortgagee's and secures the underlying debt, and the equitable title, which the mortgagor retains."  Lemelson, 721 F.3d at 23 (citing Bevilacqua v. Rodriguez, 955 N.E.2d 884, 894 (Mass. 2011)) (internal quotation marks omitted); see also Houle v. Guilbeault, 40 A.2d 438, 423

_____

[5] As Lister emphasizes throughout, this case does not arise in the context of a foreclosure.  We thus have no need to consider how a foreclosure might alter the mortgagor-mortgagee relationship in a quiet title proceeding.

(R.I. 1944). A mortgagor can reacquire this defeasible legal title by paying the debt which the mortgage secures. Lemelson, 721 F.3d at 23-24 (citing Abate v. Freemont Inv. & Loan, No. 12 MISC 464855(RBF), 2012 WL 6115613, at *4 (Mass. Land Ct. Dec. 10, 2012)); see In re D'Ellena, 640 A.2d 530, 533 (R.I. 1994) (stating that a mortgagee's legal interest is "subject to defeasance upon payment of the debt").

The key to this case is determining the import of that mortgagor-mortgagee relationship on the quiet title regime; an issue we recently resolved with respect to Massachusetts law in Lemelson. In that case, we held that given the concomitant relationship that each has with respect to the property, the mortgagor's and mortgagee's respective estates (or interests) are not adverse, but instead are "prima facie consistent with each other." Lemelson, 721 F.3d at 24 (quoting Dewey v. Bulkley, 67 Mass. (1 Gray) 416, 417 (1854)). This makes eminent sense given the way title is split. The mortgagor and mortgagee each possess "complementary" and "separate" claims; one party's interest (legal or equitable), as a general rule, does not interfere with the other's. See Lemelson, 721 F.3d at 24.

Though Lemelson interpreted Massachusetts' law to reach that conclusion, Rhode Island's identical understanding of the relationship between the mortgagor and mortgagee necessarily leads

- 11 -

to the same understanding.  See Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 52 (1st Cir. 2008) (noting that, in a diversity case applying state law, "the federal court's objective is not to choose the legal path it deems best, but, rather, to predict what path the state court would most likely travel").[6]  Indeed, we are hard-pressed to hypothesize a manner in which Rhode Island's understanding of title could lead to a different result.  Lemelson, though only persuasive authority, thus guides our resolution of this case.[7]

As noted at the outset, Lister's allegations ultimately boil down to uncertainty over who holds the mortgage.  But, while Lister maintains an equitable interest in the property, she relinquished legal title to it.  Her assertions respecting uncertainty over the mortgage speak solely to the legal title and not to her equitable interest.  There is thus not the "requisite adversity to cloud [her] claim of equitable title." Lemelson, 721 F.3d at 24 n.7.  Instead, while the economic interests of Lister and the mortgagee might be adverse in the sense that she disputes

---

[6] We are not aware of any reported case where a Rhode Island court has expressly considered this question in this context.

[7] We also note that though stylistically different, the Massachusetts try-title statute is substantively analogous to the Rhode Island law at issue here.  Compare Mass. Gen. Laws ch. 240, § 1, with R.I. Gen. Laws § 34-16-4.

- 12 -

owing any money, "[Lister] cannot be heard to argue that [the mortgagee's] claim is adverse to [her] own" within the meaning of the quiet title statute.  Id. at 24.  Her claim necessarily fails.

**V.**

The judgment of the district court is **affirmed**.