# United States Court of Appeals
## For the First Circuit

No. 14-1930

STEVEN SUMMERS,

Plaintiff, Appellant,

BRINAH COURT,

Plaintiff,

v.

FINANCIAL FREEDOM ACQUISITION LLC,

Defendant, Appellee,

FINANCIAL FREEDOM SENIOR FUNDING CORP. and
FINANCIAL FREEDOM SENIOR SERVICING CORP.,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Thompson, Circuit Judges.

Carleen N. T. Aubee for appellant.
Harris K. Weiner, with whom Salter McGowan Sylvia & Leonard, Inc., was on brief, for appellee.

October 23, 2015

**SELYA**, **Circuit Judge**.    Plaintiff-appellant Steven Summers and his sister Brinah Court inherited a house from their mother, Rosalie Summers (the decedent).  The rub was that, during her lifetime, the decedent had obtained and reaped the benefits of a reverse mortgage.  That mortgage, which contained an acceleration clause and power of sale, became due and payable upon her death.

After they inherited the property, the plaintiffs sought to take it free and clear of the mortgage lien even though the mortgage debt remained unpaid.  They argued, among other things, that the mortgage was unenforceable because the mortgagee had failed to file a claim in the decedent's estate.  Ruling on this question of first impression under Rhode Island law, the district court disagreed.  So do we: the piper must be paid.

## I.  BACKGROUND

The relevant facts are, for all intents and purposes, undisputed.  On November 4, 1977, the decedent and Charlotte T. Albeitsam took title as joint tenants with rights of survivorship to residential property at 11 Sundance Street, Warwick, Rhode Island (the Property).  Following Albeitsam's death, the decedent entered into a reverse mortgage with Financial Freedom Senior Funding Corp.  The mortgage instrument provided in pertinent part

that the full amount of the debt would become due and payable upon the death of the borrower.[1]

On September 25, 2009, Financial Freedom Senior Funding Corp. assigned the mortgage to Mortgage Electronic Registration Systems, Inc. (MERS) as a nominee of Financial Freedom Acquisition.[2] The decedent died intestate on December 8, 2009. Her son and daughter applied for letters of administration and, pursuant to statute, the estate was duly advertised and notice was given to creditors. See R.I. Gen. Laws § 33-11-5.1. Neither Financial Freedom nor MERS filed a claim in the probate proceedings. See id. § 33-11-5. The estate was duly administered and closed, and the Warwick Probate Court granted the decedent's interest in the Property to the plaintiffs.

In late 2010, the plaintiffs received a notice of foreclosure. That notice was published in accordance with statute. See id. § 34-27-4. Foreclosure proceedings went forward, MERS reassigned the mortgage to Financial Freedom, and Financial

---

[1] As an alternative to full payment, the borrower may elect to sell the property for the lesser of the mortgage balance or 95% of the property's appraised value. This alternative was never elected, so we do not discuss it further.

[2] Another company bearing the Financial Freedom appellation, Financial Freedom Senior Servicing Corp., was one of the firms that from time to time serviced the mortgage. For ease in exposition, we do not hereafter distinguish among the companies that bear the "Financial Freedom" name, but instead refer to them collectively as "Financial Freedom."

Freedom recorded the foreclosure deed granting the Property to it in November of 2011.

Dismayed by this turn of events, the plaintiffs invoked diversity jurisdiction, see 28 U.S.C. § 1332(a), and repaired to the United States District Court for the District of Rhode Island. Their suit sought to contest both the validity of the serial mortgage assignments and the foreclosure itself. During pretrial discovery, Brinah Court dropped out of the case. See Fed. R. Civ. P. 41(a).

After the close of discovery, Financial Freedom moved for summary judgment. See Fed. R. Civ. P. 56(a). The district court, ruling ore tenus, granted summary judgment over Steven Summers' objection. This timely appeal followed.[3]

## II. ANALYSIS

The appellant's challenge is two-fold: first, he argues that the district court erred in determining that he lacked standing to contest the mortgage assignments; second, he argues that in any event, Financial Freedom's failure to file a claim in the probate proceedings pretermitted its right to foreclose on the Property. Since this is a diversity case, we look to federal law for guidance on procedural matters (such as the summary judgment

---

[3] Only Steven Summers has appealed. To avoid any confusion, we henceforth refer to him as "the appellant."

framework) and to state law (here, Rhode Island law) for the substantive rules of decision. See Hanna v. Plumer, 380 U.S. 460, 473 (1965); Mason v. Telefunken Semiconductors Am., LLC, 797 F.3d 33, 38 (1st Cir. 2015).

## A. Reverse Mortgages.

Before turning to the issues sub judice, we think that an explanation of the idiosyncratic nature of reverse mortgages may assist the reader. A reverse mortgage is a loan or line of credit available to a person over the age of 62 who has equity in real estate, typically the person's home. The loan provides the borrower with cash (usually in the form of a single lump-sum payment) and is secured by the borrower's equity in the real estate. There are no monthly payments; instead, the loan is due and payable in full when the borrower dies, sells the home, or no longer uses the home as her principal residence. See generally R.I. Gen. Laws § 34-25.1.

The standard reverse mortgage has an additional feature: the underlying loan is typically on a non-recourse basis (that is, the borrower has no personal liability for repayment of the funds advanced). Put another way, the lender agrees to look exclusively to the mortgaged property for repayment.

With this foundation in place, we confront the appellant's twin claims of error. We note, though, that the

reverse mortgage that the decedent obtained from Financial Freedom was cast in the conventional mold.

**B.  <u>Standing to Challenge the Assignments</u>.**

Standing is a threshold question in every case.  <u>See</u> <u>Warth</u> v. <u>Seldin</u>, 422 U.S. 490, 498 (1975).  The existence of standing "is a legal question and, therefore, engenders de novo review."  <u>Culhane</u> v. <u>Aurora Loan Servs. of Neb.</u>, 708 F.3d 282, 289 (1st Cir. 2013) (quoting <u>Me. People's All. & Nat. Res. Def. Council</u> v. <u>Mallinckrodt, Inc.</u>, 471 F.3d 277, 283 (1st Cir. 2006)).  A plaintiff suing in federal court normally must shoulder the burden of establishing standing.  <u>Id.</u>

With respect to this issue, we do not write on a pristine page.  In <u>Lister</u> v. <u>Bank of America, N.A.</u>, 790 F.3d 20, 24-25 (1st Cir. 2015), we explicated the nature of a mortgage under Rhode Island law.  "Rhode Island is a title-theory state, in which 'a mortgagee not only obtains a lien upon the real estate by virtue of the grant of the mortgage deed but also obtains legal title to the property subject to defeasance upon payment of the debt.'" <u>Id.</u> (quoting <u>Bucci</u> v. <u>Lehman Bros. Bank, FSB</u>, 68 A.3d 1069, 1078 (R.I. 2013)).  A reverse mortgage fits within this construct.

We have ruled "that a mortgagor has standing to challenge the assignment of a mortgage on her home to the extent that such a challenge is necessary to contest a foreclosing entity's status qua mortgagee."  <u>Culhane</u>, 708 F.3d at 291.  This means that a

mortgagor (or a party standing in the mortgagor's shoes) only has standing to challenge an invalid, ineffective, or otherwise void mortgage.  See Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1, 9 (1st Cir. 2014); Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 354 (1st Cir. 2013); Culhane, 708 F.3d at 291; Mruk v. MERS, 82 A.3d 527, 536 (R.I. 2013).  The flip side of this proposition is that "a mortgagor does not have standing to challenge shortcomings in [a mortgage] assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title." Culhane, 708 F.3d at 291.  The Rhode Island Supreme Court has embraced this void/voidable distinction with respect to real estate mortgages.  See Inventach v. Superior Fire Ins. Co., 138 A. 39, 42 (R.I. 1927); Bishop v. Kent & Stanley Co., 41 A. 255, 257 (R.I. 1898); see also Clark v. MERS, 7 F. Supp. 3d 169, 175 (D.R.I. 2014).

In the first instance, then, we must determine whether the challenged mortgage assignments are void or voidable.  In Rhode Island, a valid mortgage or any of its assignments must be signed, acknowledged by notarization, delivered, and recorded.  See R.I. Gen. Laws § 34-11-1.  It is not necessary that the mortgage and the note that it secures be held by the same entity.  See Bucci, 68 A.3d at 1088.

In the case at hand, two assignments of the mortgage took place.  The summary judgment record shows that each assignment

- 8 -

complied with the necessary formalities: the relevant documents were distinguished by signature, notarization, delivery, and recordation. The record is equally clear that the parties to the assignments treated them as valid. Although the appellant questions whether the assignors possessed the requisite authority to execute the assignments, the summary judgment record contains no evidence sufficient to create a genuine issue of material fact in this regard. Unsupported allegations are not enough. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (requiring "significantly probative" evidence to defeat a properly documented summary judgment motion).

That ends this aspect of the matter. On this record, the assignments are not void but, at worst, merely voidable. It follows that the district court did not err in concluding that the appellant lacked standing to challenge them.

The appellant demurs, suggesting that the Rhode Island Supreme Court's decision in Chhun v. MERS, 84 A.3d 419 (R.I. 2014), requires a different result. We think not.

In Chhun, the court, reviewing a dismissal for failure to state a claim upon which relief can be granted, allowed a challenge to the assignment of a mortgage to go forward. See id. at 423. Chhun is easily distinguishable from the case at hand. First, this case was heard on summary judgment, not on a motion to dismiss — and the burden on the appellant was correspondingly

heavier.  See García-Catalán v. United States, 734 F.3d 100, 104 (1st Cir. 2013) (distinguishing between standard for surviving motion to dismiss and standard for surviving summary judgment); Palazzo v. Big G Supermkts., Inc., 292 A.2d 235, 237 (R.I. 1972) (same, applying Rhode Island law).

Second, the record here — unlike in Chhun, 84 A.3d at 423 — fails to delineate particular facts tending to show the invalidity of the challenged assignments.

### C.  **The Effect of the Probate Process.**

The appellant's lack of standing to challenge the validity of the mortgage assignments does not end our journey. The appellant also contends that Financial Freedom lost its right to foreclose by failing to file a claim in the probate proceedings. See R.I. Gen. Laws § 33-11-5.  This is a challenge to the enduring effectiveness of the mortgage itself (no matter who owns it) and, on the facts of this case, the appellant has standing to maintain that challenge.  We explain briefly.

The appellant inherited an interest in the Property following the completion of probate.  Financial Freedom subsequently sought to foreclose on the same Property — and that attempted foreclosure constitutes a concrete and particularized injury to the appellant.  After all, there is a direct causal link between the challenged action (the attempt to foreclose) and the threatened harm (the loss of the Property through foreclosure).

- 10 -

Rhode Island law controls here, so the appellant, who has a personal stake in the outcome, has the right to ensure that the foreclosure conforms with the law. See Culhane, 708 F.3d at 291; Mruk, 82 A.3d at 536.

We review the district court's entry of summary judgment on this claim de novo, taking the facts and all reasonable inferences therefrom in the light most flattering to the non-movant (here, the appellant). See Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999). We are not married to the district court's rationale but may validate its summary judgment order on any ground made manifest by the record. See Culhane, 708 F.3d at 291.

Because the Rhode Island Supreme Court has not addressed whether probate extinguishes a real estate mortgage, our task is to vaticinate how that court would likely rule if faced with the issue. See Wheeling & Lake Erie Ry. Co. v. Keach (In re Montreal, Me. & Atl. Ry., Ltd.), 799 F.3d 1, 10 (1st Cir. 2015). In predicting the path that a state court would probably follow, we start with settled principles of state law and fill the gaps by considering supplementary sources, such as persuasive authority from other jurisdictions and the teachings of learned treatises. See id.; Bos. Reg'l Med. Ctr., Inc. v. Reynolds (In re Bos. Reg'l Med. Ctr., Inc.), 410 F.3d 100, 108 (1st Cir. 2005).

The appellant's contention requires us to explore the intersection (if any) between mortgage foreclosures and the probate process. The Rhode Island Supreme Court frequently has looked to the common law for guidance with respect to issues of property jurisprudence, see, e.g., Zuba v. Pawtucket Credit Union, 941 A.2d 167, 171 (R.I. 2008); Ruffel v. Ruffel, 900 A.2d 1178, 1188 (R.I. 2006), so we begin our analysis by tracing how the common law historically has characterized foreclosure.

Foreclosure is an equitable remedy. See Benitez v. Bank of Nova Scotia, 125 F.2d 519, 520 (1st Cir. 1942); Walsh v. Morgan, 198 A. 555, 562 (R.I. 1938). "The land is the real defendant in [a foreclosure] proceeding." Hunt v. Darling, 59 A. 398, 399 (R.I. 1904). A foreclosure, though not literally a proceeding in rem,[4] "is in the nature of such a proceeding, and is not intended ordinarily to act *in personam*." Burgess v. Souther, 2 A. 441, 443 (R.I. 1885). Absent a statute to the contrary, a mortgagee can both sue the parties to the mortgage at common law and pursue foreclosure. See Hunt, 59 A. at 399. If a deficiency results

---

[4] Strictly speaking, it may be more appropriate to classify a foreclosure as a quasi in rem proceeding rather than an in rem proceeding. See, e.g., Freeman v. Alderson, 119 U.S. 185, 187 (1886). Here, however, linguistic precision is not at a premium. Hence, we use a shorthand and refer throughout to foreclosure as an in rem proceeding.

from a foreclosure sale, an action on the mortgage note normally will lie to recover that deficiency. See Burgess, 2 A. at 443.

We find much the same dichotomy between the encumbered property and the underlying debt in the venerable structures of maritime law. Admiralty long has recognized the feasibility of separating the mortgage res from the associated debt. See, e.g., 46 U.S.C. § 31325(b)(1) (authorizing enforcement of mortgage through in rem action against the ship).

These hoary tenets have persisted substantially intact to the present day. A compelling analogy can be found in the realm of bankruptcy law. There, a creditor may recover the deficiency on a mortgage loan through "an action against the debtor in rem," notwithstanding the debtor's discharge in bankruptcy. Couture v. Pawtucket Credit Union, 765 A.2d 831, 833 (R.I. 2001) (citing Johnson v. Home State Bank, 501 U.S. 78, 84 (1991)); see 11 U.S.C. § 522(c)(2).

We add, moreover, that the Rhode Island Supreme Court has often consulted the Restatements to bring clarity to state law, see, e.g., Bucci, 68 A.3d at 1088; Jerome v. Probate Court of Barrington, 922 A.2d 119, 122 (R.I. 2007), and we think it noteworthy that this splitting of in rem and in personam liability is consonant with the Restatement's declaration that a "mortgage is enforceable whether or not any person is personally liable for that performance." Restatement (Third) of Property: Mortgages

§ 1.1 (1997).  This dichotomy is also consistent with section 3-814 of the Uniform Probate Code, which authorizes payment of a mortgage even if a claim has not been filed in the decedent's estate.  And, finally, no less an authority than the United States Supreme Court has noted that the lender's "right to foreclose on the mortgage can be viewed as a 'right to an equitable remedy' for the debtor's default on the underlying obligation."  Johnson, 501 U.S. at 84.

The case law elsewhere, see, e.g., Mortg. Invs. Corp. v. Battle Mtn. Corp., 70 P.3d 1176, 1181 (Colo. 2003); Bank of Tokyo Co. v. Urban Food Malls Ltd., 650 N.Y.S.2d 654, 661 (App. Div. 1996); Stephens v. LPP Mortg., Ltd., 316 S.W.3d 742, 746 (Tex. App. 2010); Bank of Sun Prairie v. Marshall Dev. Co., 626 N.W.2d 319, 323 (Wis. Ct. App. 2001), confirms our intuition that the Rhode Island Supreme Court, if faced with the question, would hold that the right to foreclose should be treated as separate and distinct from the right to collect the underlying debt.  The upshot is that though the failure to file a claim in probate proceedings may extinguish personal liability on the note secured by the real estate mortgage, that failure does not extinguish the mortgage itself.  Consequently, such a failure does not interfere with the mortgagee's right to foreclose.

We believe it follows that, in Rhode Island, a mortgagee need not make a monetary claim against an estate in probate

proceedings in order to retain its in rem rights to proceed against the real property that secures the mortgage debt. In other words, "it is immaterial that the holder of [an] encumbrance does not present a claim against the estate but prefers to look to the future enforcement of his lien against the specific encumbered property only." In re Estate of Dolley, 71 Cal. Rptr. 56, 61 (Ct. App. 1968).

In a last-ditch endeavor to efface the force of this reasoning, the appellant jerry-rigs a statute of limitations argument. He asserts that the failure to submit a claim to the probate court within the statutorily prescribed period, see R.I. Gen. Laws § 33-11-5, bars Freedom Financial from later foreclosing against the Property to satisfy the underlying debt.

The appellant is fishing in an empty pond. The statute of limitations applicable to foreclosures in Rhode Island is the general 20-year statute of limitations. See R.I. Gen. Laws § 9-1-17; see also Wallbaum v. Martin, 234 A.2d 369, 370 (R.I. 1967). The limitations period associated with the probate claim-filing statute, see R.I. Gen. Laws § 33-11-5, does not apply. Cf. Higgins v. Mycroft, 92 A.2d 727, 729 (R.I. 1952) (indicating that mortgage enforcement proceedings are separate and apart from probate proceedings).

We summarize succinctly. After the decedent passed away and the mortgage balance remained unpaid, it was to the scaffold

of property law that Financial Freedom turned. It properly exercised its right of foreclosure, and that in rem proceeding was wholly independent of the probate process.

For the reasons elucidated above, we predict that the Rhode Island Supreme Court, were it confronted with the question, would conclude that the failure to file a claim in the probate court would not bar a mortgagee holding a reverse mortgage on real property from collecting the balance due through the equitable remedy of foreclosure. The probate process does not extinguish a real estate mortgage but, rather, only extinguishes personal liability for the underlying debt.

## III. CONCLUSION

We need go no further. We hold that the appellant lacks standing to challenge the interstitial mortgage assignments; and though he does have standing to challenge the effectiveness of the mortgage itself on a different ground, that challenge is fruitless. Despite its eschewal of the probate claim-filing process, Financial Freedom retained the right to enforce its reverse mortgage through foreclosure.


**Affirmed.**